HARVEST SAVINGS BANK a/k/a Harvest Savings Bank,
F.S.B., Plaintiff,

v.

ROI INVESTMENTS, a Wisconsin general partnership,
Defendant-Respondent,

John R. AMMERMAN, Richard L. Klein, Payne and
Dolan, Inc., Richard Senn and Denise Senn,
Defendants,

COMMUNITY NATIONAL BANK, Defendant-Appellant.

Court of Appeals

*No. 98–2320. Submitted on briefs April 13, 1999.—Decided
June 10, 1999.*

(Also reported in 598 N.W.2d 571.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel W. Stolper* and *Meg Vergeront, Stafford, Rosenbaum, Rieser & Hansen* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Larry I. Hanson* of *Hanson & Clark* of Madison.

Before Dykman, P.J., Roggensack and Deininger, JJ.

DEININGER, J. This appeal arises from the aftermath of a mortgage foreclosure and sale. Community National Bank (CNB), the holder of a second mortgage, appeals a judgment requiring it to reimburse the mortgage debtor, ROI Investments, for ROI's overpayment of the second-mortgage debt. CNB contends on appeal that the trial court lacked the authority to enter a judgment requiring it to reimburse ROI. We conclude that in this foreclosure action, the trial court acted within its authority in entering the judgment it did in order to prevent injustice to any of the parties. We further conclude that the trial court did not erroneously exercise its discretion in entering judgment against CNB for the amount of ROI's overpayment, and we therefore affirm that judgment.

## BACKGROUND

ROI owned a commercial office building on which Harvest Savings Bank (HSB) held a first mortgage. ROI defaulted on the first mortgage, and HSB commenced this foreclosure action. CNB was named as a defendant because it held a second mortgage on the property. The court entered a judgment of foreclosure, and at the ensuing sheriff's sale, CNB was the highest bidder for the office building.

The trial court confirmed the sale, and after payment to HSB pursuant to its first mortgage, a surplus of $235,380.20 remained. CNB filed a claim for the

surplus, contending that it was owed $272,476.44. ROI disputed several components of CNB's claim. The trial court found that CNB was owed $272,476.44 and awarded CNB the entire surplus. That order read, in relevant part:

> NOW THEREFORE, upon the motion of the attorneys for Community National Bank, it is hereby ordered that:
>
> a. Community National Bank is owed $272,476.44, on its note and mortgage, and has the first claim to any surplus.
>
> b. The Clerk of Courts shall pay the amount of the surplus, in the amount of $235,380.20, to Community National Bank, which shall be applied by Community National Bank against the debt owed to it by ROI Investments.

ROI paid CNB the difference between the surplus and the total amount found by the court to be owed, which, with added interest and attorney's fees, amounted to $44,132.97. The trial court's order did not require ROI to make this payment, but ROI apparently hoped to forestall further legal action by CNB and to suspend the accumulation of interest on its debt. In tendering payment, however, ROI stated its disagreement with the trial court's ruling regarding the amount it owed to CNB, and it informed CNB that it was considering appealing the court's order disposing of the surplus.

ROI did, in fact, appeal the trial court's order awarding the entire surplus to CNB. In *Harvest Sav. Bank v. ROI Invs.*, 209 Wis. 2d 586, 563 N.W.2d 579 (Ct. App. 1997), we concluded that CNB was not entitled to reimbursement from the foreclosure surplus for real estate taxes due at the time of the sale or for certain attorney fees. We remanded to the trial court

for recalculation of the amount owed to CNB. On remand, the trial court determined that CNB was entitled to only $214,320.75 from the surplus and that the Bank of Sun Prairie, the next creditor in line, was entitled to the remainder, $21,059.45. Accordingly, the trial court ordered that CNB pay that amount to the Bank of Sun Prairie, and CNB did so.

The current dispute arises from ROI's motion in the trial court for an order requiring CNB to repay the $44,132.97 that ROI had paid to CNB on the basis of the trial court's original order regarding payment of the surplus, which had overstated the amount owed to CNB. CNB opposed ROI's motion on the grounds that the trial court lacked authority to enter a judgment against CNB. The issue was briefed by the parties, and the trial court heard argument on two occasions. The court subsequently entered a judgment against CNB requiring it to reimburse ROI for the overpayment.[1] CNB appeals.

## ANALYSIS

██

CNB contends that the trial court did not have the authority to enter a judgment against it.[2] The question

---

[1] The judgment was in the amount of $41,254.72, representing the amount of ROI's original payment plus $2,816.49 interest, less $5,694.74 additional attorney fees owed to CNB.

[2] CNB phrases its argument in terms of the circuit court's "jurisdiction" to enter a judgment against it. As we noted in *Hengel v. Hengel*, 120 Wis. 2d 522, 524, 355 N.W.2d 846, 847 (Ct. App. 1984), *partly superseded by statute, as noted in Schmidt v. Smith*, 162 Wis. 2d 363, 370, 469 N.W.2d 855, 857 (Ct. App. 1991), the issue is more properly phrased as a question of the court's statutory authority or competence to take the action it did.

of whether the trial court had such authority is a question of law, subject to our de novo review. *See Brier v. E. C.*, 130 Wis. 2d 376, 381, 387 N.W.2d 72, 74 (1986).

CNB contends first that trial court's action on remand should have been limited to the mandate of the court of appeals, in which we instructed the trial court to "redistribute the surplus consistent with [the court's] opinion." We agree that the trial court was bound to follow our mandate; it did so by recalculating and redistributing the surplus. But the trial court also has the authority to address any remaining unresolved issues, so long as it acts in a manner consistent with our mandate:

> Where a mandate directs the entry of a particular judgment, it is the duty of the trial court to proceed as directed. The trial court may, however, determine any matters left open, and in the absence of specific directions, is generally vested with a legal discretion to take such action, not inconsistent with the order of the upper court, as seems wise and proper under the circumstances. On remand the lower court has jurisdiction to take such action as law and justice may require under the circumstances as long as it is not inconsistent with the mandate and judgment of the appellate court.

*Fullerton Lumber Co. v. Torborg*, 274 Wis. 478, 483, 80 N.W.2d 461, 464 (1957) (citations omitted). On remand, the trial court in this case took action beyond that explicitly ordered in our opinion when it entered judgment against CNB. That action, however, was not inconsistent with our opinion. For reasons we explain below, the trial court's action on remand appropriately gave effect to our decision. Accordingly, we will not reverse the trial court on the grounds that its action on remand conflicted with our mandate.

CNB contends next that the trial court lacked the authority to enter a judgment against CNB because, in a foreclosure action under ch. 846, STATS., the court is authorized only to (1) enter a judgment of foreclosure and sale; (2) enter a deficiency judgment for the plaintiff if necessary; and (3) determine the rights of all persons to the surplus, if any. CNB argues that because ROI's request that the court order CNB to repay the $44,132.97 goes beyond the actions authorized by ch. 846, the court did not have the authority to hear ROI's request unless ROI had properly initiated a separate claim against CNB. We disagree.

CNB is correct that ch. 846, STATS., does not expressly authorize the trial court to enter judgment against a co-defendant who has received an excess payment from another defendant. The trial court's authority in a foreclosure action, however, is not limited to that expressly granted by the statute. As the supreme court has recently explained:

> Foreclosure proceedings are equitable in nature, and the circuit court has the equitable authority to exercise discretion throughout the proceedings. *See Family Sav. & Loan Ass'n v. Barkwood Landscaping Co., Inc.*, 93 Wis. 2d 190, 202, 286 N.W.2d 581 (1980). *This discretion extends even after confirmation of sale, if necessary to provide " 'that no injustice shall be done to any of the parties.' " Id.* (quoting *Strong v. Catton*, 1 Wis. 408, 424 (1853)). A circuit court has the "authority to grant equitable relief, even in the absence of a statutory right." *Breier*, 130 Wis. 2d at 388–89, 387 N.W.2d 72. Moreover, a circuit court's equitable authority may not be limited absent a "clear and valid" legislative command.

State v. Excel Management Servs., 111 Wis. 2d 479, 490, 331 N.W.2d 312 (1983).

GMAC Mortgage Corp. v. Gisvold, 215 Wis. 2d 459, 480, 572 N.W.2d 466, 476 (emphasis added), *reconsideration denied*, 216 Wis. 2d 615, 579 N.W.2d 47 (1998). CNB has not pointed to any "clear and valid" legislative command that would preclude the trial court from entering judgment as it did, and we have found none. We conclude, therefore, that the trial court had discretion to enter judgment against CNB in order "to provide 'that no injustice [was] done' " to ROI. *See id.*[3]

Our review of the record demonstrates that the trial court's order to CNB to reimburse ROI for the overpayment was a proper exercise of its discretion. *Cf. Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982) (holding that discretion is properly exercised when the court examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a reasonable conclusion). We note first that CNB's procedural rights were adequately protected in the trial court. CNB had already submitted to the jurisdiction of the court as a party to HSB's foreclosure action, thus no purpose

[3] A trial court's equitable authority to prevent injustice to a party "is only appropriate when a legally protected right has been invaded." *See GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 480, 572 N.W.2d 466, 476 (1998). We conclude that ROI had a "legally protected right" to seek reimbursement of the amount it overpaid on the second-mortgage debt. CNB does not argue otherwise, contending only that ROI could not obtain its relief by motion in the foreclosure action. CNB asserts that a separate summons and complaint, or perhaps a cross-claim in the foreclosure action, was necessary before the court could entertain ROI's claim.

would have been served by requiring ROI to file a separate summons against CNB. *Cf. American Family Mut. Ins. v. Royal Ins. Co.*, 167 Wis. 2d 524, 530, 481 N.W.2d 629, 631 (1992) (holding that "[t]he purpose of the summons is two-fold: it gives notice to the defendant that an action has been commenced against such defendant and it confers jurisdiction on the court over the person served"). ROI's motion provided CNB with notice of the nature of ROI's claim, thus no purpose would have been served by requiring ROI to file a separate complaint against CNB. *Cf. Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 731, 275 N.W.2d 660, 664 (1979) (holding that the purpose of the complaint is to give notice of the nature of the claim).

CNB had the opportunity to raise any valid defense to ROI's claim in its briefs and in the two hearings conducted by the trial court. Although CNB may not have had the opportunity to conduct full-blown discovery in response to ROI's motion, the parties supported their briefs with affidavits and documents, and CNB did not argue to the trial court that it needed further discovery to resolve any factual dispute.[4] In sum, the procedures followed by the trial court afforded

---

[4] Our review of the hearings conducted in the trial court is inhibited because the record contains only excerpts from those hearings, and the excerpts do not appear to include all of the trial court's statements of its rationale regarding the issue on appeal. CNB, as the appellant, is responsible for ensuring that the record is complete on appeal, and when the record is incomplete, we must assume that the missing material supports the trial court's ruling. *See Fiumefreddo v. Mclean*, 174 Wis. 2d 10, 26–27, 496 N.W.2d 226, 232 (Ct. App. 1993).

CNB appropriate notice of, and an opportunity to be heard on, ROI's claim for repayment.[5]

██

Turning to the substance of ROI's claim for repayment and the defenses offered by CNB, we conclude that the trial court properly concluded that judgment against CNB was necessary to allow ROI to recover the payment of a sum it did not legally owe. The amount of ROI's payment to CNB was fixed by the trial court's initial determination of the total amount ROI owed to CNB on the second mortgage note. On appeal, we determined that amount was incorrect as a matter of law because it included real estate taxes for which ROI was no longer responsible. Repayment from CNB was therefore appropriate to correct a direct consequence of the trial court's original error. ROI's overpayment to CNB is not, as CNB suggests in its briefs, a "separate" and "distinct" claim. Rather, the amount of ROI's indebtedness to CNB on the second mortgage note has been a central issue in the post-confirmation foreclosure proceedings.

As for CNB's putative defenses, on appeal CNB offers no substantive argument why ROI is not entitled to repayment. CNB argued in its trial court brief that ROI was not entitled to repayment because:

---

[5] CNB supports its argument that it has lost important procedural opportunities with an analogy based on a tort claim arising from an automobile accident. CNB argues that the defendants to the tort claim would be entitled to a jury trial. On appeal, CNB does not explicitly argue that it is entitled to a jury trial on ROI's claim for repayment, although CNB's use of this example suggests that CNB believes it is so entitled. Because CNB does not support this contention with argument and authority, we do not consider it. *See State v. Shaffer*, 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (1977).

> ROI entered into an agreement with CNB, where ROI paid off [its debt to CNB] and in return got a full release and a cessation of the accrual of future attorneys' fees on these Notes. This is accord and satisfaction.

ROI responded by submitting a copy of a letter from its attorney to CNB's attorney stating:

> As you know, we disagree with [the trial court's ruling as to the amount owed to CNB] but in order to suspend the 14% rate of interest on this balance, we will tender payment in full while reserving our right to appeal his ruling, should we decide to do so.

In light of ROI's express statement of its intent to further contest the amount of its indebtedness, the trial court properly rejected CNB's claim that ROI's payment constituted an accord and satisfaction.[6] In sum, CNB has not put forward a valid defense to ROI's claim for repayment, although it has had multiple opportunities to do so.

We note, finally, that ROI cites § 806.09(1), STATS., in support of its claim that the trial court had authority to enter judgment in its favor for reimbursement of the overpayment.[7] The statute provides that a party may

---

[6] In the trial court, CNB also contended, without further elucidation in its briefs, that ROI had waived its right to collect the overpayment and that ROI was equitably estopped from collecting the overpayment. These assertions were properly rejected, because, like CNB's accord and satisfaction argument, they conflict with the documents attached to the briefs of the parties.

[7] Section 806.09(1), STATS., provides in relevant part:

> If any judgment or part of a judgment is collected and such judgment is afterwards set aside or reversed, the trial court shall order the same to be restored with interest from the time of the collection. . . . The order of restitution may be obtained upon proof

obtain a judgment to effectuate restitution in cases in which a judgment is collected but then reversed on appeal. Section 806.09(1), does not directly apply to the case at hand because ROI's overpayment to CNB was not expressly required by the court's prior judgment. Nevertheless, the circumstances addressed by the statute and those in the present case are not at opposite poles. The statute lends support to our conclusion that that the trial court did not erroneously exercise its discretion in requiring CNB to reimburse ROI for the overpayment resulting from a later-reversed trial court ruling.

## CONCLUSION

In sum, we conclude that the trial court's rendering judgment against CNB was a proper exercise of discretion, and we affirm that judgment.

*By the Court.*—Judgment affirmed.

of the facts upon notice and motion and may be enforced as a judgment.