BANK OF NEW YORK, As Trustee, Plaintiff-Respondent,

v.

David H. MILLS and Gloria Mills, a/k/a Gloria J. Mills, Defendants-Appellants,

BANC ONE FINANCIAL SERVICES, INC., Shoreview Anesthesiologists, Christopher Brown and Rick Winter, Defendants.

Court of Appeals

*No. 03–1339. Submitted on briefs December 4, 2003.—Decided February 11, 2004.*

2004 WI App 60

(Also reported in 678 N.W.2d 332.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Scott N. Burns* and *Julie A. Neuhaus* of *Halling & Cayo, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christopher M. Avery* of *Gray & End, L.L.P.*, Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. ANDERSON, P.J.   David H. Mills and Gloria Mills, a/k/a Gloria J. Mills (the Millses), appeal an order of the trial court confirming the sale of their mortgaged property to the Bank of New York, As Trustee (the Bank). The Millses also appeal the trial court's order denying their motion for reconsideration of its confirmation. The Millses argue that the trial court erred as

a matter of law because it used improper criteria to determine fair value and unfairly used a percentage in support of its determination to confirm that the bid amount represented the fair value of the property. We disagree and affirm the trial court's orders.

¶ 2. The facts are undisputed. On September 25, 2001, the Bank filed a foreclosure action against the Millses. A judgment of foreclosure was entered in November 2001 with a six-month redemption period set to expire in May 2002. The Bank granted the Millses extended time to sell the property. During this entire time, the Millses did not market the property with a real estate broker because they said they had interested buyers.

¶ 3. In December 2002, the Millses had two separate appraisals done on their land—one for a new house located on two acres of the land and one for the original farmhouse located on approximately fourteen acres of the land. At that time, they believed the land had been legally split into two parcels by the municipality. However, the land was not legally split and the Bank's mortgage was held on the entire sixteen acres of the Millses' land. When this knowledge was discovered, David Mills said one of their potential buyers "kind of backed out." He said he still had "two other people that are really interested" and that if he could "get this straightened out," he would be able to sell in "60 days for sure."

¶ 4. A sheriff's sale was held on February 4, 2003. At the sale, the Bank bid the amount of indebtedness ($271,180.91). There were no other bidders and the Bank purchased the property. A hearing to confirm the sale was held on March 29, 2003. At the hearing, the Millses opposed the confirmation, offering the two separate appraisals as evidence to show that the added

value of the separate appraisals exceeded $400,000. To support its bid amount, the Bank offered the tax bill which showed the assessed fair market value of the entire sixteen acres as $309,440. The trial court confirmed the sale. In support of its decision, the court explained:

> [U]nder the circumstances, I think that looking at the tax bill and looking at the time that has passed and the time that this property—not, after a year and a half in foreclosure, drawn an interested buyer that has signed an offer . . . . So the court is going to find that [$271,180.91—the amount bid] is fair value of the mortgaged premises under all the circumstances of the case.

¶ 5. The court signed the order confirming the sale on March 28, 2003. On April 17, 2003, the Millses filed a motion for reconsideration, requesting an order for a resale of the premises at auction on the grounds that the confirmed price was so low as to shock the conscience of the court. Also, on April 16, the Millses filed an ex parte motion to stay the sheriff from moving the Millses from the premises, pending disposition of the motion for reconsideration. A hearing was held on April 30, 2003, and the court denied the Millses' motion for reconsideration in all respects. In support of its decision, the court stated:

> I think that the court is going to adopt the same analysis that I used at the [original confirmation-of-sale hearing].
>
> But [there are] several points I think that [bear] repeating. One is, is that the defendant . . . did not list the property for sale. There was some testimony that he had . . . some interested buyers. And that's at Page 13 and 14 in the transcript. And I ask him a question:

"But my question is, have you had these properties for sale?

"Answer: No. No. One, we had a renter, this property, who had a lease. We had to get him out of the property. No. 2, we had to put in—I got the receipts at home. We put in almost 6 to $7,000 in upgrades. We did ourselves in this property. And we upgraded the property so we'd get—in this house. First, we had to get our renter out. And we had a lease up until November of this year. Of the last year, excuse me.

"So the property—Well, so the property hasn't been on the market at all?

"Answer: The property—I have three people that are really interested in the property. One I had was going to purchase the property without going through real estate, just buy it through Countrywide and me. But that fell through when we found it—it was this way. If I had 30 to 60 days to have it sold this here one property."

¶ 6. After quoting the transcript from the original confirmation-of-sale hearing, the court went on to reiterate what it had pointed out at that hearing:

This, as I pointed out originally, this case has been pending for an extended period of time. The foreclosure was filed September 25, 2001. Mr. Mills was served on 10/15/01 and he didn't file an answer. One of the allegations in the complaint was said premises cannot be sold in parcels without injury to the interests of the parties. There's no answer to that. But now the defendant comes in and has the property appraised as separate properties, separate parcels as indicated in Exhibits 1 and 2 [Exhibits 1 and 2 are the two appraisals presented at the confirmation of sale hearing].

I'm aware that the assessed value may be high, may be low, but I believe that it can be used as somewhat of

796

a benchmark. And quite frankly, the combination of the circumstances here where the property was not listed, it could have been—he makes it sound like well, if you have leases you can't sell it. Obviously, that's not the case because you can sell it . . . .

I think under all these circumstances, that the court's original finding that this is fair value, although it is under the amount that was appraised, I think that it does not shock the conscience of the court. And even if the fair market value of these two parcels being sold together is the combination of 310 and 94, which is, by my calculation 404,000, [the confirmed bid amount, $271,180.91,] comes to 67 percent [of $404,000]. And I know that there isn't any magic percentage or magic number, but the fact that it is more than two-thirds of what would be the highest value which would be as separate parcels, which the defendant didn't even respond to in the complaint, having not filed an answer and sitting on any right that he may have had; also the fact that he didn't list it as one parcel or two parcels; the fact that this is 67 percent of the amount that he has in his appraisals. I don't believe that that figure, even under those circumstances, shocks the conscience of the court.

¶ 7.   The Millses filed this appeal on May 15, 2003.

¶ 8.   It is well settled that the decision to confirm a judicial sale following a foreclosure is vested in the broad discretion of the trial court, but such confirmation may be refused if there is an apparent inadequacy in the price which was caused by mistake, misapprehension or inadvertence on the part of the interested parties or possible bidders. *First Wis. Nat'l Bank of Oshkosh v. KSW Invs., Inc.*, 71 Wis. 2d 359, 363, 238 N.W.2d 123 (1976). Foreclosure proceedings are equitable in nature, and the circuit court has the equitable

authority to exercise discretion throughout the proceedings. *Harvest Sav. Bank v. ROI Invs.*, 228 Wis. 2d 733, 739, 598 N.W.2d 571 (Ct. App. 1999). This discretion extends even after confirmation of sale, if necessary, to provide that no injustice shall be done to any of the parties. *Id.* The court has the authority to grant equitable relief, even in the absence of a statutory right. *Id.* Moreover, a circuit court's equitable authority may not be limited absent a "clear and valid" legislative command. *Id.* at 739–40.

¶ 9. WISCONSIN STAT. § 846.165(2) (2001–02)[1] provides:

> **Application for confirmation of sale and for deficiency judgment.**
>
> . . . .
>
> **(2)** In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs.

¶ 10. "Fair value" of a property is not the same as "market value" but rather a value determined by the property's sale value. *First Fin. Sav. Ass'n v. Spranger*, 156 Wis. 2d 440, 444, 456 N.W.2d 897 (1990). The inquiry must be what an able and willing buyer will reasonably pay for the property for the use to which the property has been or reasonably may be put. *Id.* at 445.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

*First Wis. Nat'l Bank of Oshkosh*, 71 Wis. 2d at 367. "Fair value" does not mean that value which the property may probably have in the future under more favorable economic conditions or that value which it may have if the property be remodeled and put to other or more extensive uses which possibly may prove more profitable. *Id.* at 365.

¶ 11.   The language of WIS. STAT. § 846.165(2) that "no sale shall be confirmed and judgment for deficiency rendered until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs" has been interpreted by the supreme court to mean nothing more than "such reasonable value as does not shock the conscience of the court." *First Wis. Nat'l Bank of Oshkosh*, 71 Wis. 2d at 367 (citation omitted).

■

¶ 12.   In finding the $271,180.91 bid made by the Bank to be the "fair value" of the property, the trial court found that the bid was not so inadequate as to shock its conscience. Such determination if made in the exercise of the trial court's discretion ordinarily will be affirmed by this court. *Id.* at 364. However, the trial court, when acting on matters resting within its discretion, must exercise a legal discretion. *Id.* If that discretion is abused or if the court proceeds upon a mistaken view of the law, we will reverse. *Id.*

¶ 13.   There is no claim in the instant case that the alleged inadequate sale price was the result of mistake, misapprehension or inadvertence; rather, the argument is that the price of $271,180.91 bid by the Bank was "substantially less than fair value of the property." The Millses claim that the alleged inadequate confirmed sale price was the result of trial court error as a matter of law because (1) it allegedly used improper criteria to

determine fair value and (2) it allegedly unfairly relied on a percentage to justify fair value.

¶ 14. We are not persuaded by the Millses' arguments of unfair trial court valuation, nor do we consider the price of $271,180.91 to be so inadequate as to shock the conscience of the court.

■

¶ 15. At the outset, we reject the Bank's opening argument that the trial court did not have a duty to find that "fair value" was bid for the property at the sheriff's sale because the Bank did not seek a deficiency judgment. Under WIS. STAT. § 846.165(2), when a creditor seeks a deficiency judgment, there is no presumption that the property sold for fair value. From that, it follows that where the mortgagee does not seek a deficiency judgment, there is a presumption. The statute does not *eliminate* the requirement that the court find "fair value."

¶ 16. We also reject the Millses' claim that the trial court erred by using a percentage in support of its determination of "fair value." This is a nonissue. The trial court rejected the Millses' appraisals so it is not significant that the court noted the ratio of the bid amount to the Millses' appraisals.

¶ 17. That disposed of, we turn to our rationale for affirming the trial court. A sheriff's sale is a distress sale; it is not conducted by a willing seller. The buyer bids at a sheriff's sale knowing that he or she is bidding on a piece of real estate at less than its market value because it is being sold to pay off a debt. The distress nature of the sale automatically reduces the price. The court then must decide whether the bid represents "fair value."

¶ 18. The determination of "fair value" identifies whether the price shocks the conscience of the court. In an equitable determination such as this, the court is not limited in what it considers. It can factor in, among other things, the time the property is offered for sale before the sheriff's sale; the offers, if any, that were received prior to the sheriff's sale; any appraisals; whether any offers were made that matched the appraisals; and, the property tax assessment.

¶ 19. The record shows that the trial court properly exercised its discretion and considered all of the evidence. The court was unimpressed with the appraisals offered by the Millses, which reflected the Millses' contention as to the value of the property. Like the tax assessment value offered by the Bank, the appraisals were assumedly based upon "fair market value"—the amount of money that property will exchange for on the market at private sale between a prudent seller, ready and willing to sell, but not compelled to sell, and a prudent buyer, ready and able to buy, but not compelled to buy. *See Sartin v. State*, 44 Wis. 2d 138, 148, 170 N.W.2d 727 (1969). Therefore, they were based on a more favorable economic condition than a distress sale.

¶ 20. We agree with the trial court that the length of time the Millses attempted to sell the property is relevant to the determination of whether the price was "fair value." Again, "fair value" is defined as "the price which a person willing and able to buy the property would reasonably pay for it, not for purposes of speculation, but for that use to which it has been or reasonably may be put." *First Wis. Nat'l Bank of Oshkosh*, 71 Wis. 2d at 368. The Millses were given eighteen months to sell the property. The property was never listed but they claim to have had interested buyers. We cannot be

801

sure what price they were seeking, but since they claim the appraisals represent the property's fair value, we can assume that they were seeking a sale price close to that of the combined appraisals, $404,000. They could not sell the property in that eighteen months' time and we consider it reasonable for the trial court to conclude that no one was willing to pay that price and that, therefore, the price of $404,000 is not a "fair value."

¶ 21. Additionally, the appraisals offered by the Millses were premised on the assumption that the property could be subdivided; however, the Bank's lien was on the property as a whole. The law does not look to what value the property might have in the future under more favorable economic conditions. *Id.* at 365. Rather, the law looks to the *present* "fair value." The court was not persuaded that the present fair value was represented by the added value of two separate appraisals, which were done without the knowledge that the Bank's mortgage was held on the entire sixteen acres of the Millses' land.

¶ 22. Thus, we cannot say that it was unreasonable for the court to have more confidence in the tax assessment evidence offered by the Bank which represented a valuation of the land as a whole. In an equitable proceeding, there is no reason why an assessment, like an appraisal, cannot be viewed as one measure of "fair value." Each case must be considered on its merits. In this case, the Bank presented evidence that the court considered more credible than the evidence presented by the Millses.

¶ 23. The trial court did not err in confirming the sale of the property and in rejecting the motion for reconsideration.[2]

*By the Court.*—Orders affirmed.

---

[2] We admonish the Millses' legal counsel for citation to an unpublished opinion in the reply brief. WISCONSIN STAT. § 809.23(3) provides:

> An unpublished opinion is of no precedential value and for this reason may not be cited in any court of this state as precedent or authority, except to support a claim of claim preclusion, issue preclusion, or law of the case.

*Aurora Loan Services, Inc. v. Owen*, No. 00–0786–FT (Ct. App. 2000), is not only unpublished, it is an opinion that was withdrawn a week after it was issued. *See* http://www.courts .state.wi.us/html/ca/00/00–0786.htm. For this violation, we assess a $50 forfeiture against the Millses' legal counsel.