REBECCA GRASSL BRADLEY, J. (dissenting).
¶61 The court of appeals correctly held that the *83 unambiguous Stipulation for Judgment and Order for Judgment and Judgment of Foreclosure and Sale and Monetary Judgment signed by Alan S. Musikantow, Marshalls Point Retreat LLC, and Horizon Bank and entered by the circuit court on September 10, 2015 ("Stipulation and Order") should be enforced. Under the Stipulation and Order, the parties agreed that Musikantow would be credited toward the judgment entered against him in the amount for which the property sold at the sheriff's sale. The majority declines to enforce the parties' agreement and instead decides the Stipulation and Order does not mean what it says.
¶62 Rather, the majority holds: (1) the Stipulation and Order contemplated only part of the credit to be applied, and (2) a circuit court presiding over a combined action for foreclosure against the mortgagor and for monetary judgment against the guarantor has the discretion to confirm the sheriff's sale without determining the guarantor's credit arising from the sale. The majority's holding ignores the fact that the Stipulation and Order-by its plain terms-resolves the entire proceeding against both Musikantow and Marshalls Point and requires the issues of "fair value" and the guarantor's credit to be resolved concurrently. The majority rewrites the parties' stipulated agreement, disregards its plain terms, and deprives one party of the benefit of the terms for which it bargained. Accordingly, I cannot join the majority's opinion.
I. BACKGROUND
A. The Facts
¶63 Marshalls Point borrowed $5 million from Horizon Bank under a Promissory Note secured by mortgaging lakefront property in Sister Bay. Musikantow *84 individually signed a Commercial Guaranty for payment and performance on the note executed by Marshalls Point, of which he was the sole member. After Marshalls Point defaulted, Horizon Bank initiated foreclosure proceedings in Door County Circuit Court, seeking foreclosure and sale of the property and demanding a monetary judgment against Musikantow pursuant to the terms of his guaranty for $4,043,555.55. The parties stipulated to entry of judgment *809 on September 10, 2015. The Stipulation and Order provided that Horizon Bank was owed $4,043,555.55, which was entered as the amount of the judgment against Musikantow; the premises were to be sold "at a fair and adequate price"; and the amount paid to Horizon Bank from the proceeds of the sale "shall be credited" toward the monetary judgment against Musikantow.
B. The Stipulation and Order
¶64 The Stipulation and Order is a single 10-page document with the parties' stipulation set forth on pages 1 to the top of 4 and the circuit court's Order for Judgment and Judgment set forth on pages 4 through 10.[1] Paragraph (b) of the Stipulation and Order provides that Marshalls Point and Musikantow "each consent and agree to the Order for Judgment and Judgment of Foreclosure and Sale and Monetary Judgment ... and stipulate and agree that said Order for Judgment and Judgment of Foreclosure and Sale and Monetary Judgment ... be immediately entered...." The first paragraph of the Order for Judgment provides that "there are no issues of law or fact *85 which have been joined which would preclude judgment for the Plaintiff in the form set forth below...."
¶65 The Stipulation and Order provides the details of how the parties would resolve Horizon Bank's claims against both Marshalls Point and Musikantow. Pursuant to paragraph (c) of the Stipulation and Order, the property would be sold under Wis. Stats. ch. 846 at a sheriff's sale. Paragraph 8 of the Stipulation and Order requires "the Premises [ ] to be sold at a fair and adequate price...." Paragraph 10 of the Stipulation and Order provides that Horizon Bank, having chosen to proceed under Wis. Stat. § 846.103, waived rights to a deficiency judgment against Marshalls Point.[2] Paragraph (d) of the Stipulation and Order reserved to Horizon Bank "the right to a monetary judgment against the guarantor-defendant ALLEN S. MUSIKANTOW (as provided for in the Judgment), which right shall not be limited or impaired in any way by this Stipulation."
¶66 Paramount to the issue before this court, the Stipulation and Order describes in paragraph 11 the only credit Musikantow could receive from the sale of the premises:
*86 The amount paid to [Horizon Bank] from the proceeds of said sale of the Premises, remaining after deduction by [Horizon Bank] of the amount of interest, fees, costs, expenses, disbursements and other charges paid or incurred by [Horizon Bank] not included in the monetary judgment against [Musikantow] ... shall be credited by [Horizon Bank] as payment on said monetary judgment.
(Emphasis added.)
¶67 In paragraph (f) of the Stipulation and Order, Musikantow and Marshalls Point "reserve all rights, objections and defenses available to them under *810 Section 846.165 of the Wisconsin Statutes or other applicable law in the event [Horizon Bank] applies to the Court for confirmation of a foreclosure sale of the Premises pursuant to the Judgment."[3] Under that *87 statute, if the sale price is less than the amount due on the mortgage debt, the circuit court may not presume the premises sold for fair value; rather, the circuit court instead must be satisfied that the fair value of the premises is credited on the mortgage debt before confirming the sale. This procedure provides interested parties the opportunity to offer evidence in support of whatever amounts they contend reflect the fair value of the property-before the court confirms the sale. This is the right Musikantow preserved under paragraph (f) of the Stipulation and Order.
C. The Circuit Court's Errors
¶68 After successfully submitting a credit bid[4] on the property for $2,250,000, Horizon Bank subsequently moved to confirm the sale, according to Wis. Stat. § 846.165(2) and paragraph (f) of the Stipulation *88 and Order, asserting that the bid represented the fair value of the property. Horizon Bank also stated, in conformance with paragraphs 8 and 10 of the Stipulation and Order, that it would not seek a deficiency judgment against Marshalls Point and asked the circuit court to apply the amount of Horizon Bank's credit bid as the credit on the $4,043,555.55 monetary judgment owed by Musikantow.
¶69 Musikantow and Marshalls Point did not object that Horizon Bank's credit bid of $2,250,000 could constitute fair value, but they requested the order confirming sale include language that the sale price have no collateral estoppel or res judicata effect on Musikantow. If the order did not contain this language, Marshalls Point and *811 Musikantow objected to that amount being credited upon the judgment against Musikantow.
¶70 The circuit court held a hearing to confirm the sheriff's sale on December 2, 2015. At that time, Marshalls Point and Musikantow disclosed a witness who was prepared to testify that the property had a market value exceeding $10,000,000. The court adjourned the hearing until December 22, 2015, in order to hear this evidence.
¶71 At the December 22nd hearing, Marshalls Point and Musikantow changed the position they took at the December 2nd hearing and asserted for the first time that the circuit court need not make an evidentiary finding regarding the property's value as to the guarantor because the guaranty contained a governing law provision providing that the guaranty is governed by "federal law applicable to the Lender and, to the extent not preempted by federal law, the laws of the State of Indiana without regard to its conflicts of law provisions." Marshalls Point and Musikantow informed *89 the circuit court that Horizon Bank had already commenced an action in the Middle District of Florida, where Musikantow resided, to enforce the monetary judgment. Marshalls Point and Musikantow asked the circuit court to decline to set the amount to be credited against the monetary judgment and let the federal court in Florida do so.
¶72 Horizon Bank objected many times over, explaining that the federal action was solely a "domestication of the monetary judgment that this Court has already entered on the guarantee in these proceedings." Therefore, it was necessary for the circuit court to decide the amount to be credited on Musikantow's monetary judgment. In addition, Horizon Bank asserted that if Musikantow wanted to raise an issue of law that would absolve him of his liability as guarantor, he should have raised it before the monetary judgment was entered. Horizon Bank also observed that there was no issue of personal or subject matter jurisdiction that would bar the circuit court in Wisconsin from determining the credit amount to be applied toward the monetary judgment against Musikantow.
¶73 The circuit court granted Musikantow's oral motion and declined to determine the credit to be applied to the judgment against him, believing that it was "dealing with a pretty set principle that federal law always trumps state law," but ultimately and erroneously deciding that "the guarantee is to be governed by federal law," completely disregarding the Stipulation and Order. The circuit court granted Horizon Bank's motion for confirmation of the sheriff's sale, finding the credit bid of $2,250,000 "represents the fair and reasonable value for the property and based upon the stipulation of judgment of foreclosure" was to be applied to the total indebtedness due on the mortgage debt.
*90 ¶74 Subsequently, the circuit court entered two orders memorializing the oral rulings from the December 22nd hearing. In the "Order Confirming Sheriff's Sale," the circuit court confirmed the sale of the property to Horizon Bank, finding "that the amount bid by Horizon Bank, National Association for the purchase of the mortgaged premises represents the fair value of said premises...." The circuit court crossed out the final paragraph of the order, which stated:
After application to the Judgment indebtedness of the amount bid at sheriff's sale of $2,250,000, there remains due under the Judgment entered against Allen S. Musikantow the sum of $1,869,460.70, as of November 4, 2015 together with subsequently accruing interest, fees and costs.
*812 ¶75 In its second order, entered on January 22, 2016, the circuit court "grant[ed] the motion of Allen S. Musikantow to decline to make a finding of the amount to be credited against the judgment of Horizon Bank, National Association against [Musikantow] as guarantor" "in light of the language in the Guaranty document indicating that it is to be governed by Federal Law." The court ordered that it "will, if required by a Federal Court, make a determination as to such amount to be credited against the judgment of Horizon Bank, National Association against [Musikantow]." Horizon Bank appealed.
¶76 The court of appeals reversed the circuit court's decision and remanded with instructions to credit Musikantow $2,250,000, the amount of the winning bid at the sheriff's sale. Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC, No. 2016AP832, unpublished slip op., ¶2, 373 Wis.2d 767, 2017 WL 389395 (Wis. Ct. App. Jan. 24, 2017)
*91 (per curiam). The court of appeals concluded the circuit court misinterpreted the governing law provision, which simply indicates which jurisdiction's substantive law governs the guaranty, but does not restrict the court's subject matter or personal jurisdiction over the case. Id., ¶20. It held the circuit court erred by refusing to determine the amount of credit because there was no reason why the circuit court could not apply whatever law was appropriate and determine the correct credit to apply toward the judgment against Musikantow. Id.
¶77 The court of appeals then determined, as agreed by all of the parties under the Stipulation and Order, that $2,250,000 should be applied as the credit toward the monetary judgment against Musikantow. Id., ¶21. It concluded "[t]he only reasonable interpretation of the phrase 'the amount paid to Horizon Bank from the proceeds of said sale of the Premises' is that it refers to the amount of the winning bid at the sheriff's sale." Id., ¶22. Musikantow conceded in the circuit court that this amount represented fair value and accordingly should be credited to the monetary judgment against Musikantow. Id., ¶23. While the court of appeals recognized that the governing law clause in Musikantow's guaranty provided for "federal law and, to the extent not preempted by federal law, ... Indiana law," it noted that Musikantow failed to cite any law contrary to the Stipulation and Order's requirement to credit him $2,250,000 and no other amount. Id., ¶24.
¶78 Musikantow moved for reconsideration, arguing that he was prepared to challenge the fair value of the property, but did not present the evidence because the circuit court agreed that the amount of his credit would not be tied to the fair value finding. The *92 court of appeals denied the motion for reconsideration. This court granted Musikantow's petition for review.
II. STANDARD OF REVIEW
¶79 The majority's primary error arises from its misapplication of the erroneous exercise of discretion standard. The court was tasked with addressing whether the circuit court erroneously exercised its discretion when it decoupled the determination of the credit to be applied to the guarantor's obligation from the underlying mortgage foreclosure action against the debtor, in spite of the Stipulation and Order resolving the claims against both. This court will uphold a circuit court's exercise of discretion if the circuit court "exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." State v. Wollman, 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979) (citation omitted). "If there was a reasonable basis for the court's determination, then we will not find an erroneous exercise of *813 discretion." State v. Hammer, 2000 WI 92, ¶21, 236 Wis. 2d 686, 613 N.W.2d 629 (citation omitted). I conclude the circuit court erroneously exercised its discretion by not following the parties' stipulation or its own order.
¶80 The majority's secondary error arises from its failure to properly set forth and apply the law regarding the interpretation of stipulations. See majority op., ¶¶52-54. This court comprehensively explained the standards for construing stipulations in Stone v. Acuity, 2008 WI 30, ¶67, 308 Wis. 2d 558, 747 N.W.2d 149. We review the interpretation of a stipulation de novo. Id., ¶21. The "interpretation of a stipulation must, above all, give effect to the intention of the parties." Id., ¶67 (quoting *93 Pierce v. Physicians Ins. Co. of Wis., Inc., 2005 WI 14, ¶31, 278 Wis. 2d 82, 692 N.W.2d 558 ). To determine the parties' intent, the stipulation's terms "should be given their plain or ordinary meaning." Id. (quoting Huml v. Vlazny, 2006 WI 87, ¶52, 293 Wis. 2d 169, 716 N.W.2d 807 ). "While relief from stipulations is governed by Wis. Stat. § 806.07, principles of contract law apply in interpreting stipulations." Id. (citing Kocinski v. Home Ins. Co., 154 Wis. 2d 56, 67-68, 452 N.W.2d 360 (1990) ). "If the agreement is not ambiguous, ascertaining the parties' intent 'ends with the four corners of the contract, without consideration of extrinsic evidence.' " Id. (quoting Huml, 293 Wis. 2d 169, ¶52, 716 N.W.2d 807 ). Terms of a stipulation are ambiguous if "reasonably or fairly susceptible to more than one construction." Id., ¶86 (Roggensack, J., concurring in part, dissenting in part) (quoting Flejter v. Estate of Flejter, 2001 WI App 26, ¶28, 240 Wis. 2d 401, 623 N.W.2d 552 ).
¶81 The fact that a stipulation "appears by hindsight to have been a bad bargain is not sufficient by itself to warrant relief." Pasternak v. Pasternak, 14 Wis. 2d 38, 46, 109 N.W.2d 511 (1961). Rather, a court will decline to enforce an unambiguous stipulation only in two instances: (1) where it was not "formalized in the way required by sec. 807.05," Kocinski, 154 Wis. 2d at 67, 452 N.W.2d 360 (citation omitted); or (2) "in a plain case of fraud, mistake, or oppression," Illinois Steel Co. v. Warras, 141 Wis. 119, 125, 123 N.W. 656 (1909) ; see also Burmeister v. Vondrachek, 86 Wis. 2d 650, 664, 273 N.W.2d 242 (1979) (first citing Wis. Stat. § 806.07(1) (1978-79); then citing Pasternak, 14 Wis. 2d at 38, 109 N.W.2d 511 ; then citing State ex rel. S. Colonization Co. v. Cir. Ct. of St. Croix County, 187 Wis. 1, 203 N.W. 923 (1925) ). Neither party asserts the Stipulation and Order suffers from either infirmity, and because the Stipulation and Order is not ambiguous, the circuit court was required to enforce it. Its failure to do so was erroneous.
*94 III. ANALYSIS
A. The Circuit Court Erroneously Exercised its Discretion by Failing to Apply the Stipulation and Order.
¶82 The Stipulation and Order effectuated a global resolution of Horizon Bank's foreclosure and monetary judgment claims against Marshalls Point and Musikantow, respectively. A plain-meaning interpretation of the Stipulation and Order required the circuit court to apply the credit toward the monetary judgment against Musikantow in an amount equal to the proceeds of the sale of the property, unless Musikantow successfully argued the sale price did not accurately reflect fair value. Here, the proceeds were in the form of Horizon Bank's credit bid. The circuit court should have flatly rejected Musikantow's last hour[5] choice of law argument because the *814 Stipulation and Order, executed in Wisconsin, nullified the guaranty's choice of law provision. The majority errs in concluding that the circuit court's decision to "decouple" the guaranty and foreclosure sale proceedings "was not an error of fact or law and thus its exercise of discretion was not erroneous." Majority op., ¶45.
¶83 By sanctioning the circuit court's actions, the majority overlooks the two false premises underlying the circuit court's decision: First, the circuit court inexplicably imported the governing law provision from the guaranty into the Stipulation and Order.[6] The circuit court failed to recognize that the terms and *95 conditions of the guaranty no longer applied once the parties entered into the Stipulation and Order to resolve their dispute. Second, the federal court in which Horizon Bank filed the domestication action lacked any power whatsoever to determine fair value, and could only enforce the judgment against Musikantow.
¶84 As noted by the court of appeals, there was both a forum selection clause in the guaranty providing that litigation was to be venued in LaPorte County, Indiana, and a governing law provision providing that federal law or, unless preempted, Indiana law applied to the interpretation of the guaranty. Despite these provisions, Horizon Bank filed its complaint in Wisconsin and Musikantow raised no objection until after the Stipulation and Order was executed by the parties and entered by the court. Thus, the circuit court had jurisdiction over the entire proceeding by virtue of the parties stipulating to settlement of the matter in Wisconsin Circuit Court. When the parties reached a stipulated settlement, there was no reason to interpret the guaranty any longer, so the choice of law provision became irrelevant. Unless Musikantow established that the Stipulation and Order was entered into under *96 fraud, mistake, or oppression, he was not entitled to relief from it. See supra ¶81 (first citing Illinois Steel Co., 141 Wis. at 125, 123 N.W. 656 ; then citing Burmeister, 86 Wis. 2d at 664, 273 N.W.2d 242 ). The Stipulation and Order superseded the guaranty not only on the issues of choice of law and venue but in its entirety, and the Stipulation and Order constituted the parties' exclusive agreement on the terms governing application of any credit toward the monetary judgment against Musikantow.
¶85 As to the circuit court's second false premise, it failed to comprehend the purpose of the domestication action in the United States Court for the Middle District of Florida. That proceeding was commenced solely to enforce the judgment entered by the Wisconsin Circuit Court against Musikantow. The action was filed in Florida federal district court on the basis of diversity of citizenship. The Florida district court lacked jurisdiction to resolve the credit issue; its singular power in the domestication action was to make enforceable *815 in Florida the monetary judgment entered in Wisconsin. See Trauger v. A.J. Spagnol Lumber Co., 442 So.2d 182, 183 (Fla. 1983) ("An action to recover on a foreign judgment is completely independent from the original cause of action. It is the judgment from the other state which forms the basis for the cause of action, and the validity of the claim on which the foreign judgment was entered is not open to inquiry.").[7] *97 ¶86 These are basic principles of contract and civil procedure law. The circuit court's failure to recognize and apply them was clearly erroneous. It is unclear whether Musikantow's arguments on these matters arose from trial counsel's strategy or mistake. Regardless, his arguments inducing the circuit court to decline to determine Musikantow's credit cannot now give his client the opportunity to recontest fair value. Musikantow contends that denying him another chance to litigate the fair value of the property would offend procedural due process. However, procedural due process simply requires notice and an opportunity to be heard. Sweet v. Berge, 113 Wis. 2d 61, 64, 334 N.W.2d 559 (Ct. App. 1983) (citation omitted). Here, Musikantow had both.
¶87 Musikantow explicitly reserved rights to litigate fair value prior to confirmation of the sheriff's sale under Wis. Stat. § 846.165, per paragraph (f) of the Stipulation and Order. Paragraph 8 of the Stipulation and Order required the premises "to be sold at a fair and adequate price." In the Order Confirming Sheriff's Sale, the circuit court found "that the amount bid by Horizon Bank, National Association for the purchase of the mortgaged premises represents the fair value of said premises." If Musikantow disagreed, he should have contested this before the circuit court instead of just talking about doing so. His failure to present testimony or any evidence on fair value in any respect constitutes a waiver of the rights he reserved under the Stipulation and Order. See Brunton v. Nuvell Credit Corp., 2010 WI 50, ¶35, 325 Wis. 2d 135, 785 N.W.2d 302 ("waiver is the intentional relinquishment or abandonment of a known right" (quoting State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 ) ). By declining to apply any credit to the *98 monetary judgment against Musikantow based on Musikantow's argument that this determination needed to be made in federal court, the circuit court failed to correctly apply the law, the parties' agreement, and its own order.
¶88 Ignoring the fact that the Stipulation and Order resolved all of the parties' claims and defenses, the majority extends the circuit court's error by permitting the proceedings against the guarantor and mortgagor to be decoupled: "Further reflecting that fair value in the context of Wis. Stat. § 846.165 and the credit due on a guaranty are separate issues, the amount of a credit to be applied to a guaranty may be litigated in an action wholly apart from the fair value contemplated by § 846.165." Majority op., ¶40. All of this is true, as a general proposition. In so holding in this case, however, the majority rewrites the terms of the Stipulation and Order by excising the stipulated terms and conditions governing the calculation of the monetary judgment against Musikantow. The majority also misconstrues *816 McFarland State Bank v. Sherry, 2012 WI App 4, 338 Wis. 2d 462, 809 N.W.2d 58, a case wholly consistent with the terms of the Stipulation and Order and also instructive on the issue of decoupling mortgage foreclosure and guaranty proceedings generally.
¶89 In McFarland, a bank successfully submitted a credit bid and acquired the mortgaged property at a sheriff's sale. Id., ¶1. A monetary judgment was entered against the guarantor for the remaining balance on the loan. Id. In the order confirming the sale, the circuit court found the property had a fair value of $147,000. Id., ¶5. The guarantor argued he was entitled to an offset against the monetary judgment in that amount. Id., ¶12. Among the bank's arguments, *99 it cited Crown Life Ins. Co. v. LaBonte,[8] for the proposition that the fair value finding should not fix the amount of the offset; instead, "the circuit court could find a different value of the property, perhaps relying on additional evidence, for purposes of determining what [the guarantor's] offset should be." Id., ¶29. The court of appeals rejected this argument, instead requiring that the confirmed sale price be applied as the credit to the guarantor. Id., ¶31. It held that Crown Life did not "stand[ ] for the proposition" that a guarantor could be credited in an amount different from the fair value finding because "the trial court's use of that approach was not at issue before the supreme court." Id., ¶29-30. Moreover, the holding in Crown Life was inapplicable in McFarland because "the guarantor in Crown Life , unlike [the guarantor in McFarland ], was not a party to the foreclosure proceedings." Id., ¶30. As a result, the guarantor in Crown Life , unlike the guarantor in McFarland-or Musikantow in this case-did not have the same opportunity to contest a fair value finding tied to the amount of the credit bid.
¶90 Under McFarland, where the guarantor is a party to the mortgage foreclosure proceedings, "it does not make sense" to "calculate[ ] a guarantor's liability based on a property value different than the price for which the property originally sold at a sheriff's sale." Id., ¶30. In this context, the fair value determination applies against both the guarantor and the mortgagor. No issues with due process arise because the guarantor is a party to the proceeding and can also litigate fair value alongside the mortgagor. While McFarland does not control the disposition of this case-the Stipulation and Order does-it is not a leap of logic *100 to infer that parties negotiating settlement agreements under comparable facts rely on pertinent case law in crafting them. Here, the procedure for determining fair value tracks the rationale explained in McFarland for tying the sheriff's sale proceeds to the offset applied in the guarantor's favor-subject to the guarantor's ability to offer evidence supporting a different fair value before confirmation of the sale.
¶91 In distinguishing McFarland , the majority instead relies on Crown Life to support its conclusion that "the debt due under the mortgage and under the guaranty may properly follow separate tracks." Majority op., ¶42. However, as noted in McFarland , the guarantor in Crown Life -unlike the guarantor in McFarland -was not a party to the foreclosure proceedings. Unlike this case, in Crown Life there was no global settlement of the foreclosure action and the action on the guaranty, which proceeded independently and were resolved separately, the latter via a court trial. Accordingly, Crown Life lends support only to the conclusion that these two actions may proceed separately. But that unremarkable notion does not afford the circuit court the discretion to disregard the *817 terms negotiated by the parties, set forth in a written stipulation and order, and entered by the court as a final judgment resolving all claims and defenses between the mortgagor, the bank, and the guarantor. Even the broad powers of a court acting in equity do not give a court such authority. A stipulation "is entitled to all the sanctity of any other [contract], and, when on the faith of it the parties have so acted in execution thereof that the status quo cannot be re-established as to one of them, it is only in a plain case of fraud, mistake, or oppression that the court should set it aside." Illinois Steel Co., 141 Wis. at 125, 123 N.W. 656. The majority nevertheless invokes a circuit court's *101 equitable powers to set aside a stipulated settlement of equitable and contract claims, to ignore the Stipulation and Order's terms, and to decide the already-settled issues as the court wished rather than as the parties agreed. Why would any similarly-situated parties ever settle such claims if the court may act on whim?[9]
¶92 By ignoring McFarland and casting aside the Stipulation and Order, the majority, under the guise of equity, jettisons fundamental rules governing the interpretation of stipulations and civil procedure that previously informed settlements of the sort reached by the parties in this case. See majority op., ¶44. This ruling is without precedent but now puts lenders, debtors and guarantors on notice that even a stipulated settlement, signed court order, and entered judgment will not bind a court to its terms but may be disregarded and rewritten by the circuit court.
B. The Stipulation and Order is Not Ambiguous Regarding the Amount Musikantow Will Be Credited on the Monetary Judgment.
¶93 The majority's interpretation of the Stipulation and Order regarding the amount to be credited to Musikantow against the monetary judgment is incorrect. Paragraph 11 dictates how Musikantow is to be credited for the value from the sale of the premises acquired by Horizon Bank:
*102 The amount paid to [Horizon Bank] from the proceeds of said sale of the Premises, remaining after deduction by [Horizon Bank] of the amount of interest, fees, costs, expenses, disbursements and other charges paid or incurred by [Horizon Bank] not included in the monetary judgment against [Musikantow] (set forth below) shall be credited by [Horizon Bank] as payment on said monetary judgment.
The majority says this paragraph is ambiguous because it could reasonably be interpreted to mean the proceeds from the sale established the minimum amount of Musikantow's credit. Majority op., ¶¶48-51. I disagree.
¶94 When read in the context of the Stipulation and Order, there is no reasonable alternative reading of paragraph 11's language-"proceeds of said sale ... shall be credited ... as payment on said monetary judgment"-except that Musikantow receives the $2,250,000 credit on the monetary judgment. The majority does not offer any reasonable alternative, nor does it employ any discernable principles of contract interpretation. See majority op., ¶¶54-56.
*818 Rather, the majority simply regards this phrase as open-ended-"the floor"-thereby entitling Musikantow to a credit on the monetary judgment in some amount greater than the $2,250,000 credit bid by Horizon Bank. This conclusory assumption loses sight of the fact that paragraph 11 is part of a Stipulation and Order that resolves all claims and defenses between the parties. The Stipulation and Order directs a sheriff's sale of the premises for a "fair and adequate price" (paragraph 8); preserves Musikantow's rights to contest court confirmation of the sale (paragraph (f) ); and mandates Musikantow be credited the amount paid to Horizon Bank from the proceeds of the sale as payment on the *103 monetary judgment against him (paragraph 11). There is no provision whatsoever permitting the court to "leav[e] the determination of the credit toward the guaranty for another day." Majority, ¶44.
¶95 The negative implication canon-expressio unius est exclusio alterius-is especially instructive here. "Under this principle, a specific mention in a contract of one or more matters is considered to exclude other matters of the same nature or class not expressly mentioned, even when all such matters would have been inferred had none been expressed." Goebel v. First Fed. Sav. & Loan Ass'n of Racine, 83 Wis. 2d 668, 673, 266 N.W.2d 352 (1978) (citations omitted). Essentially, the canon provides that the thing specified "can reasonably be thought to be an expression of all that shares in the grant or prohibition allowed." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012).
¶96 Here, paragraph 11 is the sole and specific mention in the Stipulation and Order of how much Musikantow will be credited on the monetary judgment. Paragraph 11 excludes alternative means by which Musikantow can be credited on the monetary judgment. It does not contain inclusive language (for example, "not limited to," "including," "such as," "at least," et cetera), an integrated list of items to be credited, or any language that would indicate Musikantow is entitled to be credited more than the "proceeds of said sale" of the mortgaged property.
¶97 The majority asserts that "[t]he stipulation prescribes what must be done, but it does not describe that the amount is the totality of the credit." Majority op., ¶54. The negative implication canon rhetorically responds: "Does not the act of prescribing the mode, necessarily imply a prohibition to all other modes?"
*104 Scalia & Garner, supra ¶35, at 109-10 (quoting South Carolina ex rel M'Cready v. Hunt, 20 S.C.L. (2 Hill 1), 230 (S.C. Ct. App. 1834) ). Here, solely prescribing the mode and extent of crediting Musikantow from the "proceeds of said sale" works to exclude all other modes and amounts of credit.
¶98 Regardless of the pervasive invocations of equity by the majority, the Stipulation and Order governs all issues presented. Enforcing this agreement is entirely dispositive of Musikantow's appeal. The Stipulation and Order is unambiguous and its terms provide the singular means by which Musikantow will be credited for "payment on said monetary judgment": the "proceeds of said sale," specifically $2,250,000.
IV
¶99 The majority incorrectly invokes equity to trump the terms and conditions of a valid and enforceable Stipulation and Order. The majority unwinds the Stipulation and Order, and "decouples" the contract claim against Musikantow from the foreclosure claim against Marshalls Point. The Stipulation and Order mandates that Musikantow receive no more credit than the *819 "proceeds of said sale," which was the amount of the $2,250,000 credit bid, yet the majority allows Musikantow to return to the circuit court to relitigate an issue he waived by declining to exercise the rights he reserved under the Stipulation and Order. The court of appeals decision was correct and I would affirm. Because equity may not override the terms of a stipulation and order for judgment, I respectfully dissent.

The Stipulation signed by the parties is arranged in lettered paragraphs, while the Order for Judgment signed by the circuit court is arranged in numbered paragraphs.

Wisconsin Stat. § 846.103(1) provides for a redemption period prior to a foreclosure sale. Section 846.103(2) provides for a reduced redemption period when a plaintiff in a foreclosure action "elect[s] by express allegation in the complaint to waive judgment for any deficiency which may remain due to the plaintiff after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage...." A plaintiff that waives a deficiency judgment does not "forfeit the right to obtain a judgment against a guarantor of payment" because "guarantors are not parties 'personally liable for the debt secured by the mortgage.' " Bank Mut. v. S.J. Boyer Const., Inc., 2010 WI 74, ¶77, 326 Wis. 2d 521, 785 N.W.2d 462.

Wisconsin Stat. § 846.165 provides the means by which the parties to a foreclosure action can apply for confirmation of sale and a deficiency judgment. Subsection (1) entitles parties appearing in the action to prior notice of confirmation of sale proceedings. Subsection (2) provides:
In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs.
Fair value is not the same as fair market value, but rather is "a value determined by the property's sale value." Bank of New York v. Mills, 2004 WI App 60, ¶10, 270 Wis. 2d 790, 678 N.W.2d 332 (citing First Fin. Sav. Ass'n v. Spranger, 156 Wis. 2d 440, 444, 456 N.W.2d 897 (1990) ). In the context of a sheriff's sale, the circuit court will confirm the sale and accept the winning bid as the fair value so long as that price is of "such reasonable value as does not shock the conscience of the court." First Wis. Nat'l Bank of Oshkosh v. KSW Invs., Inc., 71 Wis. 2d 359, 367, 238 N.W.2d 123 (1976) (citation omitted). "[M]ere inadequacy of price is not usually sufficient grounds of itself for vacating a judicial sale ... unless the inadequacy is so gross as to shock the conscience and raise a presumption of fraud, unfairness, or mistake." Gumz v. Chickering, 19 Wis. 2d 625, 635, 121 N.W.2d 279 (1963) (citing Anthony Grignano Co. v. Gooch, 259 Wis. 138, 47 N.W.2d 895 (1951) ). Where the mortgagee waives any deficiency judgment against the mortgagor, such waiver creates a presumption that the court's fair value determination is correct. Bank of New York, 270 Wis. 2d 790, ¶15, 678 N.W.2d 332. Regardless of whether the presumption of correctness arises or not, "[t]he statute does not eliminate the requirement that the court find 'fair value.' " Id.

When a lender bids on property at a sheriff's sale, the amount it successfully bids is the price "paid" for the property because it is required to offset the amount bid against the amount owed by the mortgagor or, as in this case where the deficiency is waived, against the guarantor. McFarland State Bank v. Sherry, 2012 WI App 4, ¶5 n.1, 338 Wis. 2d 462, 809 N.W.2d 58.

At no point, until the December 22nd confirmation of sale hearing, did any party dispute either the application of Wisconsin law or venue.

A governing law provision permits parties to "expressly agree that the law of a particular jurisdiction shall control their contractual relations." Bush v. Nat'l Sch. Studios, Inc., 139 Wis. 2d 635, 642, 407 N.W.2d 883 (1987) ; see also Choice-of-law clause, Black's Law Dictionary (10th ed. 2014) ("A contractual provision by which the parties designate the jurisdiction whose law will govern any disputes that may arise between the parties."). By contrast, a forum selection or choice of venue clause permits parties to choose the forum in which to litigate their claims. See Beilfuss v. Huffy Corp., 2004 WI App 118, ¶¶7-8, 274 Wis. 2d 500, 685 N.W.2d 373 ; see also Forum-selection clause, Black's Law Dictionary (10th ed. 2014) ("A contractual provision in which the parties establish the place (such as the country, state, or type of court) for specified litigation between them.").

See also Stefan A. Riesenfeld, Creditors' Remedies and the Conflict of Laws-Part One: Individual Collection of Claims, 60 Colum. L. Rev. 659, 681 n.12 (1960) ("The term 'domesticated foreign judgment' is employed to designate out-of-state judgments that by some step short of an action on the foreign judgment resulting in a domestic judgment have become assimilated to domestic judgments for purposes of enforcement.").

111 Wis. 2d 26, 32, 330 N.W.2d 201 (1983).

The majority's disposition of this case impacts not only these parties but potentially all lenders and borrowers. As correctly noted by the amicus curiae, Wisconsin Bankers Association, the uncertainty generated by the majority's decision to disturb the reasonable expectation that the parties' contract would be enforced may increase the cost of lending, which basic economic principles suggest will be passed on to borrowers rather than borne by lenders.