# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP832 |
| COMPLETE TITLE: | Horizon Bank, National Association,<br>                    Plaintiff-Appellant,<br>          v.<br>Marshalls Point Retreat LLC and Marshall's Point Association, Inc.,<br>                    Defendants,<br>Allen S. Musikantow,<br>                    Defendant-Respondent-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 373 Wis. 2d 767, 895 N.W.2d 855
(2017 – Unpublished)

| | |
|---|---|
| OPINION FILED: | March 6, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 7, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Door |
| JUDGE: | D. T. Ehlers |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | R.G. BRADLEY, J. dissents (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *James E. Goldschmidt*, *Donald K. Schott*, and *Quarles & Brady LLP*, Madison and Milwaukee. There was an oral argument by *Donald K. Schott*.

For the plaintiff-appellant, there was a brief filed by *Melinda A. Bialzik*, *Samuel C. Wisotzkey*, and *Kohner, Mann & Kailas*, *S.C.*, Milwaukee. There was an oral argument by *Melinda A. Bialzik.*

An amicus curiae brief was filed on behalf of Wisconsin Bankers Association by *Kirsten E. Spira*, *John E. Knight*, and *Boardman & Clark LLP*, Madison.

No. 2016AP832
(L.C. No. 2015CV125)

STATE OF WISCONSIN            :            IN SUPREME COURT

Horizon Bank, National Association,

      Plaintiff-Appellant,

    v.

Marshalls Point Retreat LLC and Marshall's
Point Association, Inc.,

      Defendants,

Allen S. Musikantow,

      Defendant-Respondent-Petitioner.

FILED

MAR 6, 2018

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 ANN WALSH BRADLEY, J. The petitioner, Allen S. Musikantow (Musikantow), seeks review of an unpublished per curiam decision of the court of appeals directing that the circuit court apply a credit of $2,250,000 to a money judgment

entered against Musikantow as guarantor of a loan.[1] Musikantow contends that the court of appeals erred by limiting the credit to the amount of the winning bid at the sheriff's sale thereby precluding the circuit court from hearing evidence of the fair value of the property after the confirmation of sale.

¶2 Specifically, Musikantow contends that Wis. Stat. § 846.165 (2015-16)[2] does not require a circuit court to make a determination of a guaranty credit at the time the foreclosure sale is confirmed. He further argues that circuit courts have

---

[1] Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC, No. 2016AP832, unpublished slip op., (Wis. Ct. App. Jan. 24, 2017) (per curiam) (reversing order of circuit court for Door County, D.T. Ehlers, Judge).

[2] Wis. Stat. § 846.165 provides in relevant part:

(1) No sale on a judgment of mortgage foreclosure shall be confirmed unless 5 days' notice has been given to all parties that have appeared in the action. . . . and the notice shall state, in addition to other matter required by law, the amount of the judgment, the amount realized upon the sale, the amount for which personal judgment will be sought against the several parties naming them, and the time and place of hearing.

(2) In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs (emphasis added).

All subsequent references to the Wisconsin statutes are to the 2015-16 version unless otherwise indicated.

2

the discretion to decouple guaranty-related rulings from underlying foreclosure sales.

¶3 We conclude that Wis. Stat. § 846.165 does not apply to credits toward a judgment on a guaranty. Rather, it applies to the relationship between only the mortgagee and mortgagor who signed the promissory note underlying the mortgage. It therefore cannot serve as authority for the proposition that, when confirming a foreclosure sale, a circuit court must determine the amount of a credit to be applied to a judgment on a guaranty.

¶4 Further, we conclude that when an action for foreclosure against a mortgagor and an action for a money judgment on a guaranty are brought in the same proceeding as in the instant case, the circuit court may, in its discretion, decide the amount of a credit to be applied to a judgment on a guaranty either at the time the sale is confirmed or at another time. The questions of fair value for purposes of Wis. Stat. § 846.165 and the amount of any credit toward the judgment on the guaranty are separate questions. Thus, the circuit court did not erroneously exercise its discretion when it decoupled the confirmation of sale from the determination of the guaranty credit.

¶5 Finally, we determine that the stipulation in this case does not establish that the amount of the winning bid at the sheriff's sale shall be the sole credit toward the money judgment against Musikantow.

¶6 Accordingly, we reverse the decision of the court of appeals and remand to the circuit court for further proceedings to determine the amount of the credit to be applied toward the judgment against Musikantow as guarantor.

I

¶7 Horizon Bank, National Association (Horizon Bank) loaned $5 million to Marshalls Point Retreat LLC (Marshalls Point), secured by a mortgage on property located in Sister Bay.[3] Musikantow, a member of Marshalls Point, signed a continuing guaranty of payment for the loan.

¶8 Alleging that Marshalls Point had defaulted on the loan, Horizon Bank brought a foreclosure action. In the same action, Horizon Bank also brought a claim for a money judgment against Musikantow pursuant to the terms of the guaranty.

¶9 The parties stipulated to the entry of judgment on both of Horizon Bank's claims. The stipulation contained an order for judgment, which the circuit court signed. A judgment for foreclosure was entered against Marshalls Point and a money judgment was entered against Musikantow as guarantor for $4,045,555.55, the amount of principal and interest remaining on the loan.

---

[3] The property at issue is an 8,738 square foot house situated on 21.20 acres with 797 feet of frontage along Lake Michigan.

4

¶10 In addition, the stipulation provided that the Sister Bay property may be sold at a sheriff's sale. It further stated that:

> [t]he amount paid to [Horizon Bank] from the proceeds of said sale of the Premises, remaining after deduction by [Horizon Bank] of the amount of interest, fees, costs, expenses, disbursements and other charges paid or incurred by [Horizon Bank] not included in the monetary judgment against [Musikantow] (set forth below) shall be credited by [Horizon Bank] as payment on said monetary judgment.

¶11 At the sheriff's sale, Horizon Bank bought the Sister Bay property for a credit bid of $2,250,000. The sole bid was from Horizon Bank.

¶12 Horizon Bank moved the circuit court to confirm the sale pursuant to Wis. Stat. § 846.165, arguing that the amount of its bid at the sheriff's sale constituted "fair value" of the Sister Bay property.[4] In support of its determination of fair value, Horizon Bank submitted two expert witness affidavits.

¶13 Additionally, Horizon Bank indicated in its motion to confirm the sale that it would not seek a deficiency judgment

---

[4] See Wis. Stat. § 846.165(2) ("In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs").

against Marshalls Point.[5] Finally, it requested that the circuit court apply the amount of the winning bid at the sheriff's sale as a credit toward the judgment against Musikantow, thereby reducing the amount of the money judgment by that amount.

¶14 In response to the motion to confirm the sale, Marshalls Point and Musikantow "recognize[d] that the court must find that the amount bid at sale represents fair value, even though the mortgagee did not seek a deficiency judgment against the mortgagor." They also conceded that "[f]air value is not the same as fair market value."

¶15 Thus, Marshalls Point and Musikantow did not object to the confirmation of sale at the price of Horizon Bank's winning bid at the sheriff's sale on the condition that certain language be added to the order confirming the sale. They sought language to protect Musikantow from being bound to the amount of the winning bid as the amount of the credit:

> Notwithstanding anything in this order, the confirmation of the sale of the collateral to Horizon Bank, following a deficiency against the borrower, shall have no collateral estoppel or res judicata effect should Horizon Bank seek to recover against the guarantor, Allen S. Musikantow, on all or any part of the judgment against Allen S. Musikantow as guarantor of this obligation.

---

[5] A waiver of a deficiency judgment against Marshalls Point does not preclude Horizon Bank from seeking payment from Musikantow. Indeed, a deficiency judgment cannot be granted against a guarantor because the guarantor's debt is pursuant to a contract apart from the promissory note. Stellmacher v. Union Mortg. Loan Co., 195 Wis. 635, 637, 219 N.W. 343 (1928).

¶16 Marshalls Point and Musikantow further indicated that, if the requested language was not inserted into the order, they would object "not to the confirmation of the sale itself, but to the amount to be credited upon the judgment against [Musikantow]." They asserted that the Sister Bay property had a fair market value far in excess of the $2,250,000 winning bid, arguing that the actual value of the property exceeded $10 million.

¶17 The circuit court held a hearing on the motion to confirm the sale. Marshalls Point and Musikantow reiterated their desire for additional language in the order as reflected above. See supra, ¶15. Their counsel stated, "We don't oppose confirmation of sale in and of itself at that price. What we oppose is a finding of the value which would be binding on the guarantor."

¶18 Additionally, counsel for Marshalls Point and Musikantow indicated that a witness was present in the courtroom who would testify that the Sister Bay property had a market value exceeding $10 million. The circuit court adjourned and rescheduled the hearing and the witness never testified.

¶19 At the next scheduled hearing, counsel for Marshalls Point and Musikantow asserted that there was "a great deal of testimony" that could be presented about the property's market value. However, counsel did not offer this testimony based on the belief "that it's really not necessary that we make an evidentiary finding with respect to the value to be placed upon the residence[.]"

¶20 Rather, counsel observed that the guaranty Musikantow signed contained a governing law provision. This provision stated that the guaranty "will be governed by federal law applicable to lender and to the extent not preempted by federal law, the laws of the State of Indiana without regard to its conflicts of law provisions." Counsel expressed his view that "it's clearly not a Wisconsin case in terms of the substantive law. It is, however, in Wisconsin for procedural issues dealing with the foreclosure."

¶21 Additionally, counsel indicated that Horizon Bank had already filed a federal lawsuit in Florida, where Musikantow resided, for the purpose of "authenticating" the judgment against him. He argued that "what we're doing is we're going above and beyond what's required in Wisconsin procedural law to decide an issue that's . . . more likely to be litigated in the State of Florida as to the value to be credited for that property."

¶22 In response, Horizon Bank explained that "[t]he federal action is a domestication of the money judgment that this [c]ourt has already entered on the guarant[y] in these proceedings." Horizon Bank further asserted, "The judgment has been entered. He was personally served. He was under the jurisdiction of the [c]ourt. The [c]ourt entered a money judgment. Those issues are done." Thus, it requested that the circuit court confirm the sheriff's sale and apply the $2,250,000 proceeds from the sheriff's sale as "the only number that can be credited to the judgment."

8

¶23 The circuit court granted Horizon Bank's motion to confirm the sale. It further found "that a bid price of 2.25 million dollars represents fair and reasonable value for the property." However, the circuit court declined to rule on the credit to be applied toward the judgment against Musikantow as guarantor.

¶24 In declining to rule on the amount of the credit, the circuit court expressed its belief that because of the governing law provision, the Florida district court would determine the amount of the credit.[6] The circuit court stated:

> I guess if the federal courts kick this back to me to make a decision [about] what is to be the appropriate credit under the commercial guarant[y], well, then we'll have a hearing and I'll make that decision. But I'm not going to preempt federal law at this point.
>
> Maybe the federal courts are going to kick it back here. Maybe they're going to kick it back to Indiana. I don't know whether they're going to kick it back. If it's kicked back here, then I'll deal with it. . . .
>
> [T]his is a federal issue and I'm not going to deal with it today.

¶25 Accordingly, the circuit court entered an order confirming the sale. Consistent with its determination to leave the calculation of Musikantow's credit for another day, it

---

[6] The circuit court's belief in this regard was incorrect. Horizon Bank later filed a motion to dismiss the Florida action, which was granted. The amount of the credit was never determined by the Florida court.

crossed out the final paragraph of the proposed order, which set forth:

> After application to the Judgment indebtedness of the amount bid at sheriff's sale of $2,250,000, there remains due under the Judgment entered against Allen S. Musikantow the sum of $1,869,460.70, as of November 4, 2015, together with subsequently accruing interest, fees and costs.

¶26 A month later, the circuit court entered another order. "[I]n light of the language in the Guaranty document indicating that it is to be governed by Federal Law[,]" the circuit court stated that it would "decline to make a finding of the amount to be credited against the judgment of Horizon Bank [] against [] Musikantow as guarantor." The court advised it would, "if requested by a Federal Court, make a determination as to such amount to be credited against the judgment of Horizon Bank [] against [] Musikantow."

¶27 Horizon Bank appealed the second order. On appeal, Horizon Bank argued that the stipulation between the parties controlled the amount of the credit to be applied toward the judgment. The court of appeals agreed, reversing the circuit court and remanding with the direction to amend the money judgment against Musikantow by applying a sole credit of $2,250,000. Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC, No. 2016AP832, unpublished slip op., ¶25 (Wis. Ct. App. Jan. 24, 2017) (per curiam).

II

¶28 This case requires us to interpret Wis. Stat. § 846.165. Statutory interpretation is a question of law we

10

review independently of the determinations of the circuit court and court of appeals. GMAC Mortg. Corp. v. Gisvold, 215 Wis. 2d 459, ¶29, 572 N.W.2d 466 (1998).

¶29 We are also asked to address whether the circuit court erroneously exercised its discretion when it decoupled the guaranty-related credit determination from the underlying foreclosure action. This court will uphold the discretionary decision of a circuit court as long as the circuit court's exercise of discretion was not erroneous. Hull v. State Farm Mut. Auto. Ins. Co., 222 Wis. 2d 627, ¶11, 586 N.W.2d 863 (1998). An exercise of discretion is erroneous if it is based on an error of fact or law. Zarder v. Humana Ins. Co., 2010 WI 35, ¶21, 324 Wis. 2d 325, 782 N.W.2d 682.

¶30 Finally, we construe the stipulation between the parties. The interpretation of a stipulation is also a question of law we review independently of the determinations of the circuit court and court of appeals. Stone v. Acuity, 2008 WI 30, ¶21, 308 Wis. 2d 558, 747 N.W.2d 149.

III

¶31 The court of appeals based its determination on the language of the stipulation and its understanding that Musikantow had conceded fair value. Nevertheless, to provide context we begin our analysis by examining the statutory procedure for confirmation of sale set forth in Wis. Stat. § 846.165. Subsequently, we address the circuit court's discretion to set forth the procedure when foreclosure and a money judgment on a guaranty are brought in the same proceeding.

11

Finally, we consider the stipulation of the parties and its effect on the amount to be credited.

A

¶32 Wisconsin Stat. § 846.165 governs the procedure for confirming a sheriff's sale of a foreclosed property. At issue here is sub. (2), which provides:

> In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs.

¶33 Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we need not further the inquiry. Id.

¶34 The plain language of Wis. Stat. § 846.165(2) indicates that it does not apply to a judgment obtained against a third-party guarantor. It states that confirmation of sale cannot occur until the circuit court "is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs." § 846.165(2) (emphasis added). Thus, the statute relates to the relationship between only the mortgagee and mortgagor who signed the promissory note underlying the mortgage. The "mortgage debt" referenced in the

12

statute is not the same as the debt stemming from a third-party guaranty.

¶35 A guarantor's liability arises not from the debt itself, but from a separate guaranty contract. Bank Mut. v. S.J. Boyer Const., Inc., 2010 WI 74, ¶53, 326 Wis. 2d 521, 785 N.W.2d 462. "Therefore, although guarantors of payment are personally liable for some amount according to the terms of their guaranty contract, they are not personally liable for the debt secured by the mortgage." Id.

¶36 Because the plain language of Wis. Stat. § 846.165(2) is unambiguous, we need not pursue further inquiry. Kalal, 271 Wis. 2d 633, ¶45. We therefore conclude that § 846.165(2) does not apply to credits toward a judgment on a guaranty. Rather, it applies to the relationship between only the mortgagee and mortgagor who signed the promissory note underlying the mortgage. Accordingly, it cannot serve as authority for the proposition that, when confirming a foreclosure sale, a circuit

13

court must also determine the amount of a credit to be applied to a judgment on a guaranty.[7]

                                B

¶37 Our conclusion that Wis. Stat. § 846.165 applies to the relationship between only the mortgagee and the debt underlying the mortgage highlights the divergent tracks mortgage related determinations and guaranty related determinations may take. For example, the question of fair value for purposes of confirming the sheriff's sale pursuant to § 846.165 presents a different question than that of the credit a guarantor receives when the subject property transfers by means of a foreclosure and sale.

¶38 Those two questions are decided under separate standards. A determination that the amount of proceeds at a sheriff's sale constitutes "fair value" is subject to a "shock the conscience" standard. See Bank of New York v. Mills, 2004 WI App 60, ¶18, 270 Wis. 2d 790, 678 N.W.2d 332. "The

---

[7] Horizon Bank's position that a circuit court must determine the amount of a credit to be applied to a judgment on a guaranty during a hearing to confirm a foreclosure sale raises significant due process concerns. There is no statutory requirement that a guarantor receive notice of the confirmation hearing. Wisconsin Stat. § 846.165(1) requires notice "to all parties that have appeared in the action." Because a mortgagee can pursue foreclosure without ever joining the guarantor, the guarantor may never appear in the action and consequently may not receive notice of the hearing. Without statutorily-required notice, guarantors can be deprived of the ability to challenge the fair value of the property and thus be saddled with a credit amount they did not have the opportunity to contest.

determination of 'fair value' identifies whether the price shocks the conscience of the court." Id.

¶39 In contrast, the amount of a credit to be due on a guaranty is strictly a matter of contract. "A guarantor's liability depends upon the particular terms of his or her engagement." Crown Life Ins. Co. v. LaBonte, 111 Wis. 2d 26, 32, 330 N.W.2d 201 (1983) (citing Continental Bank & Trust Co. v. Akwa, 58 Wis. 2d 376, 388, 206 N.W.2d 174 (1973)).

¶40 Further reflecting that fair value in the context of Wis. Stat. § 846.165 and the credit due on a guaranty are separate issues, the amount of a credit to be applied to a guaranty may be litigated in an action wholly apart from the fair value contemplated by § 846.165.

¶41 The procedure followed in Crown Life, 111 Wis. 2d 26, is instructive here. Crown Life involved an action to collect on a contractual guaranty of a note after the mortgage that secured the debt had proceeded through foreclosure and sale and the lender had not received full payment. Id. at 30-31.

¶42 Although Musikantow, unlike the guarantor in Crown Life, was a party to the foreclosure action here, Crown Life demonstrates that the debt due under the mortgage and under the guaranty may properly follow separate tracks. See id. The two determinations need not even be part of the same action, and thus need not be made at the same time.

¶43 Our conclusion is consistent with Crown Life and with the equitable nature of foreclosure proceedings. As Crown Life illustrates, a foreclosure action against a mortgagor and a

15

related action for money judgment on a guaranty can proceed together or separately.  If a lender chooses to bring the two actions together, as was the case here, the circuit court has discretion in deciding how to most fairly determine the separate issues of (1) fair value for purposes of confirming the sale and (2) the credit to be applied to the judgment against the guarantor.  The circuit court has the discretion to decide these issues at the same time or separately.

¶44  "Foreclosure proceedings are equitable in nature, and the circuit court has the equitable authority to exercise discretion throughout the proceedings."  Walworth State Bank v. Abbey Springs Condominium Ass'n, Inc., 2016 WI 30, ¶24, 368 Wis. 2d 72, 878 N.W.2d 170 (quoting GMAC Mortg. Corp., 215 Wis. 2d 459, ¶37).  In the circuit court's discretion, it could be fair to speedily confirm the sale when there will be no deficiency judgment against the mortgagor, while leaving the determination of the credit toward the guaranty for another day.[8]

¶45 As Musikantow suggested at oral argument, specific characteristics of the subject property, in addition to other concerns, may play a role in a circuit court's determination of what is equitable under the circumstances.  Because the circuit court could properly decouple the guaranty and foreclosure sale

---

[8] Admittedly, an action based on a guaranty is a matter of contract and not equity.  Nevertheless, because the actions were brought together, the exercise of the circuit court's equitable powers in the foreclosure proceeding can affect the action on the guaranty.

proceedings, its decision to do so was not an error of fact or law and thus its exercise of discretion was not erroneous.[9]

¶46 We therefore conclude that when an action for foreclosure against a mortgagor and an action for a money judgment on a guaranty are brought in the same proceeding as in this case, the circuit court may, in its discretion, decide the separate questions of fair value for purposes of Wis. Stat. § 846.165 and the amount of any credit toward the judgment on the guaranty either at the same time or separately.

C

¶47 Having determined that Wis. Stat. § 846.165 does not apply and that the circuit court was within its discretion to allow the case to proceed on two separate tracks, we examine next the interpretation of the stipulation between the parties. The central question is whether the stipulation requires the $2,250,000 credit to be applied as the sole credit toward the guaranty.

¶48 All parties to this case entered into a stipulation, which the circuit court formalized through the issuance of an order.  At issue here is paragraph 11 of the stipulation, which states:

---

[9] Although the circuit court's belief that the Florida court would decide the amount of the credit was ultimately incorrect, the circuit court was within its discretion to leave open the possibility of later deciding the amount of the credit itself. As explained above, such a decoupling of the confirmation of sale and the credit determination is within the circuit court's discretion.

The amount paid to [Horizon Bank] from the proceeds of said sale of the Premises, remaining after deduction by [Horizon Bank] of the amount of interest, fees, costs, expenses, disbursements and other charges paid or incurred by [Horizon Bank] not included in the monetary judgment against [Musikantow] (set forth below) shall be credited by [Horizon Bank] as payment on said monetary judgment.

¶49 The court of appeals found paragraph 11 of the stipulation to be clear and dispositive. In concluding that the stipulation controls the amount of the credit to be applied toward the judgment against Musikantow, the court of appeals stated:

Musikantow conceded in the circuit court that the bid price of $2,250,000 represented the fair value of the subject property, and he does not argue otherwise on appeal. The circuit court expressly found that the bid represented the property's fair value, and it therefore confirmed the sheriff's sale. Upon confirmation of sale, title to the property was transferred to Horizon Bank, and the bank therefore received 'proceeds of said sale' worth $2,250,000. Accordingly, based on the parties' stipulation and the judgment entered according to its terms, the court should have applied a $2,250,000 credit toward the judgment against Musikantow.

Horizon Bank, Nat'l Ass'n, No. 2016AP832, unpublished slip op., ¶23.

¶50 The court of appeals misinterpreted the exclusive and determinative nature of the stipulation. Although the stipulation mandates that the amount of the winning bid at the sheriff's sale be credited on the judgment against Musikantow, it does not state that it must be the exclusive credit to be granted toward the judgment.

18

¶51 Contract interpretation generally seeks to give effect to the intentions of the parties.  Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶25, 348 Wis. 2d 631, 833 N.W.2d 586 (citing Seitzinger v. Cmty. Health Network, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426).  However, subjective intent is not the be-all and end-all of contract interpretation.  Id., ¶25 (citing Kernz v. J.L. French Corp., 2003 WI App 140, ¶9, 266 Wis. 2d 124, 667 N.W.2d 751).  Rather, unambiguous contract language controls the interpretation of contracts.  Id.  This court construes contracts as they are written.  Id., ¶29.

¶52 The court of appeals implicitly concluded that the language in paragraph 11 of the stipulation was unambiguous.  It determined that the stipulation provides for the "proceeds of the sale," and only the "proceeds of the sale," to be applied as a credit toward the judgment against the guarantor.  See Horizon Bank, Nat'l Ass'n, No. 2016AP832, unpublished slip op., ¶24 ("the parties' stipulation requires a $2,250,000 credit toward the money judgment") (emphasis added).

¶53 Upon our independent review of the stipulation, we find it ambiguous as to the amount of the total credit.  The operative portion of the stipulation provides that the proceeds of the sheriff's sale "shall be credited by [Horizon Bank] as payment on said monetary judgment" against Musikantow.  It does

not say that the proceeds of the sheriff's sale shall be the sole credit toward the judgment against Musikantow.[10]

¶54 The stipulation prescribes what must be done, but it does not describe that the amount is the totality of the credit. Hence, the stipulation provides a "floor" for the amount of the credit, but not a "ceiling."[11]

¶55 Additionally, we observe that Musikantow declined to present evidence as to the value of the property with the expectation that he would be able to later contest the amount of the credit. The record undermines the court of appeals'

---

[10] The dissent's concern about dire consequences occasioned by the majority opinion misses an essential point. See dissent, ¶¶91 n.9, 92. It ignores that our conclusion is based on the interpretation of the particular stipulation at issue here. Contrary to the dissent's assertion, our determination does not upset the parties' reasonable expectations. Conversely, our decision should serve to drive banks and guarantors to write clearer stipulations that unambiguously reflect their intentions if they truly intend to resolve the full credit amount by stipulation.

[11] Contrary to the suggestion of the dissent, McFarland State Bank v. Sherry, 2012 WI App 4, 338 Wis. 2d 462, 809 N.W.2d 58, does not control the interpretation of the stipulation. First, the McFarland State Bank court did not interpret contract language like that at issue here. Second, the lender in McFarland State Bank argued that the guarantor should receive a credit less than the fair value amount determined at the confirmation of sale. Id., ¶¶29-30.

The court of appeals rejected this argument, but did not conclude that a guarantor's credit must always be equal to the circuit court's fair value determination at the confirmation of sale. This is entirely consistent with our determination that the stipulation language in this case constitutes a "floor" but not a "ceiling" for the credit amount.

conclusion that Musikantow conceded the amount of the credit. As set forth above, Musikantow requested several times that his credit not be bound by the amount of the winning bid at the sheriff's sale. Although he may have conceded the fair value for purposes of confirmation of sale, he did not concede the amount of the credit. As analyzed above, these are two separate questions.

¶56 Accordingly, we determine that the stipulation in this case does not establish that the amount of the winning bid at the sheriff's sale shall be the sole credit toward the money judgment against Musikantow.

IV

¶57 In sum, we conclude that Wis. Stat. § 846.165 does not apply to credits toward a judgment on a guaranty. Rather, it applies to the relationship between only the mortgagee and mortgagor who signed the promissory note underlying the mortgage. Therefore, it cannot be read as requiring the circuit court to determine the amount of a credit to be applied to a judgment on a guaranty when confirming the foreclosure sale.

¶58 We further conclude that when an action for foreclosure against a mortgagor and an action for a money judgment on a guaranty are brought in the same proceeding as in the instant case, the circuit court may, in its discretion, decide the separate questions of fair value for purposes of Wis. Stat. § 846.165 and the amount of any credit toward the judgment on the guaranty either at the same time or separately.

21

Accordingly, the circuit court did not erroneously exercise its discretion in decoupling these questions.

¶59 Finally, we determine that the stipulation in this case does not establish that the amount of the winning bid at the sheriff's sale shall be the sole credit toward the money judgment against Musikantow.

¶60 Accordingly, we reverse the decision of the court of appeals and remand to the circuit court for a determination of the amount of the credit to be applied toward the judgment against Musikantow as guarantor.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the circuit court.

¶61 REBECCA GRASSL BRADLEY, J. *(dissenting).* The court of appeals correctly held that the unambiguous Stipulation for Judgment and Order for Judgment and Judgment of Foreclosure and Sale and Monetary Judgment signed by Alan S. Musikantow, Marshalls Point Retreat LLC, and Horizon Bank and entered by the circuit court on September 10, 2015 ("Stipulation and Order") should be enforced. Under the Stipulation and Order, the parties agreed that Musikantow would be credited toward the judgment entered against him in the amount for which the property sold at the sheriff's sale. The majority declines to enforce the parties' agreement and instead decides the Stipulation and Order does not mean what it says.

¶62 Rather, the majority holds: (1) the Stipulation and Order contemplated only part of the credit to be applied, and (2) a circuit court presiding over a combined action for foreclosure against the mortgagor and for monetary judgment against the guarantor has the discretion to confirm the sheriff's sale without determining the guarantor's credit arising from the sale. The majority's holding ignores the fact that the Stipulation and Order——by its plain terms——resolves the entire proceeding against both Musikantow and Marshalls Point and requires the issues of "fair value" and the guarantor's credit to be resolved concurrently. The majority rewrites the parties' stipulated agreement, disregards its plain terms, and deprives one party of the benefit of the terms for which it bargained. Accordingly, I cannot join the majority's opinion.

1

## I. BACKGROUND

### A. The Facts

¶63 Marshalls Point borrowed $5 million from Horizon Bank under a Promissory Note secured by mortgaging lakefront property in Sister Bay. Musikantow individually signed a Commercial Guaranty for payment and performance on the note executed by Marshalls Point, of which he was the sole member. After Marshalls Point defaulted, Horizon Bank initiated foreclosure proceedings in Door County Circuit Court, seeking foreclosure and sale of the property and demanding a monetary judgment against Musikantow pursuant to the terms of his guaranty for $4,043,555.55. The parties stipulated to entry of judgment on September 10, 2015. The Stipulation and Order provided that Horizon Bank was owed $4,043,555.55, which was entered as the amount of the judgment against Musikantow; the premises were to be sold "at a fair and adequate price"; and the amount paid to Horizon Bank from the proceeds of the sale "shall be credited" toward the monetary judgment against Musikantow.

### B. The Stipulation and Order

¶64 The Stipulation and Order is a single 10-page document with the parties' stipulation set forth on pages 1 to the top of 4 and the circuit court's Order for Judgment and Judgment set forth on pages 4 through 10.[1] Paragraph (b) of the Stipulation and Order provides that Marshalls Point and

---

[1] The Stipulation signed by the parties is arranged in lettered paragraphs, while the Order for Judgment signed by the circuit court is arranged in numbered paragraphs.

Musikantow "each consent and agree to the Order for Judgment and Judgment of Foreclosure and Sale and Monetary Judgment . . . and stipulate and agree that said Order for Judgment and Judgment of Foreclosure and Sale and Monetary Judgment . . . be immediately entered . . . ." The first paragraph of the Order for Judgment provides that "there are no issues of law or fact which have been joined which would preclude judgment for the Plaintiff in the form set forth below . . . ."

¶65 The Stipulation and Order provides the details of how the parties would resolve Horizon Bank's claims against both Marshalls Point and Musikantow. Pursuant to paragraph (c) of the Stipulation and Order, the property would be sold under Wis. Stats. ch. 846 at a sheriff's sale. Paragraph 8 of the Stipulation and Order requires "the Premises [] to be sold at a fair and adequate price . . . ." Paragraph 10 of the Stipulation and Order provides that Horizon Bank, having chosen to proceed under Wis. Stat. § 846.103, waived rights to a deficiency judgment against Marshalls Point.[2] Paragraph (d) of

---

[2] Wisconsin Stat. § 846.103(1) provides for a redemption period prior to a foreclosure sale. Section 846.103(2) provides for a reduced redemption period when a plaintiff in a foreclosure action "elect[s] by express allegation in the complaint to waive judgment for any deficiency which may remain due to the plaintiff after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage . . . ." A plaintiff that waives a deficiency judgment does not "forfeit the right to obtain a judgment against a guarantor of payment" because "guarantors are not parties 'personally liable for the debt secured by the mortgage.'" Bank Mut. v. S.J. Boyer Const., Inc., 2010 WI 74, ¶77, 326 Wis. 2d 521, 785 N.W.2d 462.

the Stipulation and Order reserved to Horizon Bank "the right to a monetary judgment against the guarantor-defendant ALLEN S. MUSIKANTOW (as provided for in the Judgment), which right shall not be limited or impaired in any way by this Stipulation."

¶66 Paramount to the issue before this court, the Stipulation and Order describes in paragraph 11 the only credit Musikantow could receive from the sale of the premises:

> The amount paid to [Horizon Bank] <u>from the proceeds of said sale of the Premises,</u> remaining after deduction by [Horizon Bank] of the amount of interest, fees, costs, expenses, disbursements and other charges paid or incurred by [Horizon Bank] not included in the monetary judgment against [Musikantow] . . . <u>shall be credited by [Horizon Bank] as payment on said monetary judgment.</u>

(Emphasis added.)

¶67 In paragraph (f) of the Stipulation and Order, Musikantow and Marshalls Point "reserve all rights, objections and defenses available to them under Section 846.165 of the Wisconsin Statutes or other applicable law in the event [Horizon Bank] applies to the Court for confirmation of a foreclosure sale of the Premises pursuant to the Judgment."[3] Under that

---

[3] Wisconsin Stat. § 846.165 provides the means by which the parties to a foreclosure action can apply for confirmation of sale and a deficiency judgment. Subsection (1) entitles parties appearing in the action to prior notice of confirmation of sale proceedings. Subsection (2) provides:

> In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of

(continued)

4

statute, if the sale price is less than the amount due on the mortgage debt, the circuit court may not presume the premises sold for fair value; rather, the circuit court instead must be satisfied that the fair value of the premises is credited on the mortgage debt before confirming the sale. This procedure provides interested parties the opportunity to offer evidence in support of whatever amounts they contend reflect the fair value of the property——before the court confirms the sale. This is the right Musikantow preserved under paragraph (f) of the Stipulation and Order.

---

the premises sold has been credited on the mortgage debt, interest and costs.

Fair value is not the same as fair market value, but rather is "a value determined by the property's sale value." Bank of New York v. Mills, 2004 WI App 60, ¶10, 270 Wis. 2d 790, 678 N.W.2d 332 (citing First Fin. Sav. Ass'n v. Spranger, 156 Wis. 2d 440, 444, 456 N.W.2d 897 (1990)). In the context of a sheriff's sale, the circuit court will confirm the sale and accept the winning bid as the fair value so long as that price is of "such reasonable value as does not shock the conscience of the court." First Wis. Nat'l Bank of Oshkosh v. KSW Invs., Inc., 71 Wis. 2d 359, 367, 238 N.W.2d 123 (1976) (citation omitted). "[M]ere inadequacy of price is not usually sufficient grounds of itself for vacating a judicial sale . . . unless the inadequacy is so gross as to shock the conscience and raise a presumption of fraud, unfairness, or mistake." Gumz v. Chickering, 19 Wis. 2d 625, 635, 121 N.W.2d 279, 284 (1963) (citing Anthony Grignano Co. v. Gooch, 259 Wis. 138, 47 N.W.2d 895 (1951). Where the mortgagee waives any deficiency judgment against the mortgagor, such waiver creates a presumption that the court's fair value determination is correct. Bank of New York, 270 Wis. 2d 790, ¶15. Regardless of whether the presumption of correctness arises or not, "[t]he statute does not eliminate the requirement that the court find 'fair value.'" Id.

C. The Circuit Court's Errors

¶68 After successfully submitting a credit bid[4] on the property for $2,250,000, Horizon Bank subsequently moved to confirm the sale, according to Wis. Stat. § 846.165(2) and paragraph (f) of the Stipulation and Order, asserting that the bid represented the fair value of the property. Horizon Bank also stated, in conformance with paragraphs 8 and 10 of the Stipulation and Order, that it would not seek a deficiency judgment against Marshalls Point and asked the circuit court to apply the amount of Horizon Bank's credit bid as the credit on the $4,043,555.55 monetary judgment owed by Musikantow.

¶69 Musikantow and Marshalls Point did not object that Horizon Bank's credit bid of $2,250,000 could constitute fair value, but they requested the order confirming sale include language that the sale price have no collateral estoppel or res judicata effect on Musikantow. If the order did not contain this language, Marshalls Point and Musikantow objected to that amount being credited upon the judgment against Musikantow.

¶70 The circuit court held a hearing to confirm the sheriff's sale on December 2, 2015. At that time, Marshalls Point and Musikantow disclosed a witness who was prepared to testify that the property had a market value exceeding

---

[4] When a lender bids on property at a sheriff's sale, the amount it successfully bids is the price "paid" for the property because it is required to offset the amount bid against the amount owed by the mortgagor or, as in this case where the deficiency is waived, against the guarantor. McFarland State Bank v. Sherry, 2012 WI App 4, ¶5 n.1, 338 Wis. 2d 462, 809 N.W.2d 58.

$10,000,000. The court adjourned the hearing until December 22, 2015, in order to hear this evidence.

¶71 At the December 22nd hearing, Marshalls Point and Musikantow changed the position they took at the December 2nd hearing and asserted for the first time that the circuit court need not make an evidentiary finding regarding the property's value as to the guarantor because the guaranty contained a governing law provision providing that the guaranty is governed by "federal law applicable to the Lender and, to the extent not preempted by federal law, the laws of the State of Indiana without regard to its conflicts of law provisions." Marshalls Point and Musikantow informed the circuit court that Horizon Bank had already commenced an action in the Middle District of Florida, where Musikantow resided, to enforce the monetary judgment. Marshalls Point and Musikantow asked the circuit court to decline to set the amount to be credited against the monetary judgment and let the federal court in Florida do so.

¶72 Horizon Bank objected many times over, explaining that the federal action was solely a "domestication of the monetary judgment that this Court has already entered on the guarantee in these proceedings." Therefore, it was necessary for the circuit court to decide the amount to be credited on Musikantow's monetary judgment. In addition, Horizon Bank asserted that if Musikantow wanted to raise an issue of law that would absolve him of his liability as guarantor, he should have raised it before the monetary judgment was entered. Horizon Bank also observed that there was no issue of personal or subject matter

7

jurisdiction that would bar the circuit court in Wisconsin from determining the credit amount to be applied toward the monetary judgment against Musikantow.

¶73 The circuit court granted Musikantow's oral motion and declined to determine the credit to be applied to the judgment against him, believing that it was "dealing with a pretty set principle that federal law always trumps state law," but ultimately and erroneously deciding that "the guarantee is to be governed by federal law," completely disregarding the Stipulation and Order. The circuit court granted Horizon Bank's motion for confirmation of the sheriff's sale, finding the credit bid of $2,250,000 "represents the fair and reasonable value for the property and based upon the stipulation of judgment of foreclosure" was to be applied to the total indebtedness due on the mortgage debt.

¶74 Subsequently, the circuit court entered two orders memorializing the oral rulings from the December 22nd hearing. In the "Order Confirming Sheriff's Sale," the circuit court confirmed the sale of the property to Horizon Bank, finding "that the amount bid by Horizon Bank, National Association for the purchase of the mortgaged premises represents the fair value of said premises . . . ." The circuit court crossed out the final paragraph of the order, which stated:

> After application to the Judgment indebtedness of the amount bid at sheriff's sale of $2,250,000, there remains due under the Judgment entered against Allen S. Musikantow the sum of $1,869,460.70, as of November 4, 2015 together with subsequently accruing interest, fees and costs.

8

¶75 In its second order, entered on January 22, 2016, the circuit court "grant[ed] the motion of Allen S. Musikantow to decline to make a finding of the amount to be credited against the judgment of Horizon Bank, National Association against [Musikantow] as guarantor" "in light of the language in the Guaranty document indicating that it is to be governed by Federal Law." The court ordered that it "will, if required by a Federal Court, make a determination as to such amount to be credited against the judgment of Horizon Bank, National Association against [Musikantow]." Horizon Bank appealed.

¶76 The court of appeals reversed the circuit court's decision and remanded with instructions to credit Musikantow $2,250,000, the amount of the winning bid at the sheriff's sale. Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC, No. 2016AP832, unpublished slip op., ¶2 (Wis. Ct. App. Jan. 24, 2017) (per curiam). The court of appeals concluded the circuit court misinterpreted the governing law provision, which simply indicates which jurisdiction's substantive law governs the guaranty, but does not restrict the court's subject matter or personal jurisdiction over the case. Id., ¶20. It held the circuit court erred by refusing to determine the amount of credit because there was no reason why the circuit court could not apply whatever law was appropriate and determine the correct credit to apply toward the judgment against Musikantow. Id.

¶77 The court of appeals then determined, as agreed by all of the parties under the Stipulation and Order, that $2,250,000 should be applied as the credit toward the monetary judgment

9

against Musikantow. Id., ¶21. It concluded "[t]he only reasonable interpretation of the phrase 'the amount paid to Horizon Bank from the proceeds of said sale of the Premises' is that it refers to the amount of the winning bid at the sheriff's sale." Id., ¶22. Musikantow conceded in the circuit court that this amount represented fair value and accordingly should be credited to the monetary judgment against Musikantow. Id., ¶23. While the court of appeals recognized that the governing law clause in Musikantow's guaranty provided for "federal law and, to the extent not preempted by federal law, . . . Indiana law," it noted that Musikantow failed to cite any law contrary to the Stipulation and Order's requirement to credit him $2,250,000 and no other amount. Id., ¶24.

¶78 Musikantow moved for reconsideration, arguing that he was prepared to challenge the fair value of the property, but did not present the evidence because the circuit court agreed that the amount of his credit would not be tied to the fair value finding. The court of appeals denied the motion for reconsideration. This court granted Musikantow's petition for review.

## II. STANDARD OF REVIEW

¶79 The majority's primary error arises from its misapplication of the erroneous exercise of discretion standard. The court was tasked with addressing whether the circuit court erroneously exercised its discretion when it decoupled the determination of the credit to be applied to the guarantor's obligation from the underlying mortgage foreclosure action

10

against the debtor, in spite of the Stipulation and Order resolving the claims against both. This court will uphold a circuit court's exercise of discretion if the circuit court "exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." State v. Wollman, 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979) (citation omitted). "If there was a reasonable basis for the court's determination, then we will not find an erroneous exercise of discretion." State v. Hammer, 2000 WI 92, ¶21, 236 Wis. 2d 686, 613 N.W.2d 629 (citation omitted). I conclude the circuit court erroneously exercised its discretion by not following the parties' stipulation or its own order.

¶80 The majority's secondary error arises from its failure to properly set forth and apply the law regarding the interpretation of stipulations. See majority op., ¶¶52-54. This court comprehensively explained the standards for construing stipulations in Stone v. Acuity, 2008 WI 30, ¶67, 308 Wis. 2d 558, 747 N.W.2d 149. We review the interpretation of a stipulation de novo. Id., ¶21. The "interpretation of a stipulation must, above all, give effect to the intention of the parties." Id., ¶67 (quoting Pierce v. Physicians Ins. Co. of Wis., Inc., 2005 WI 14, ¶31, 278 Wis. 2d 82, 692 N.W.2d 558). To determine the parties' intent, the stipulation's terms "should be given their plain or ordinary meaning." Id. (quoting Huml v. Vlazny, 2006 WI 87, ¶52, 293 Wis. 2d 169, 716 N.W.2d 807). "While relief from stipulations is governed by Wis. Stat. § 806.07, principles of contract law apply in interpreting

11

stipulations." Id. (citing Kocinski v. Home Ins. Co., 154 Wis. 2d 56, 67-68, 452 N.W.2d 360 (1990)). "If the agreement is not ambiguous, ascertaining the parties' intent 'ends with the four corners of the contract, without consideration of extrinsic evidence.'" Id. (quoting Huml, 293 Wis. 2d 169, ¶52). Terms of a stipulation are ambiguous if "reasonably or fairly susceptible to more than one construction." Id., ¶86 (Roggensack, J., concurring in part, dissenting in part) (quoting Flejter v. Estate of Flejter, 2001 WI App 26, ¶28, 240 Wis. 2d 401, 623 N.W.2d 552).

¶81 The fact that a stipulation "appears by hindsight to have been a bad bargain is not sufficient by itself to warrant relief." Pasternak v. Pasternak, 14 Wis. 2d 38, 46, 109 N.W.2d 511 (1961). Rather, a court will decline to enforce an unambiguous stipulation only in two instances: (1) where it was not "formalized in the way required by sec. 807.05," Kocinski, 154 Wis. 2d at 67 (citation omitted); or (2) "in a plain case of fraud, mistake, or oppression," Illinois Steel Co. v. Warras, 141 Wis. 119, 125, 123 N.W. 656 (1909); see also Burmeister v. Vondrachek, 86 Wis. 2d 650, 664, 273 N.W.2d 242 (1979) (first citing Wis. Stat. § 806.07(1) (1978-79); then citing Pasternak, 14 Wis. 2d at 38; then citing State ex rel. S. Colonization Co. v. Cir. Ct. of St. Croix County, 187 Wis. 1, 203 N.W. 923 (1925)). Neither party asserts the Stipulation and Order suffers from either infirmity, and because the Stipulation and Order is not ambiguous, the circuit court was required to enforce it. Its failure to do so was erroneous.

## III. ANALYSIS

### A. The Circuit Court Erroneously Exercised its Discretion by Failing to Apply the Stipulation and Order.

¶82 The Stipulation and Order effectuated a global resolution of Horizon Bank's foreclosure and monetary judgment claims against Marshalls Point and Musikantow, respectively. A plain-meaning interpretation of the Stipulation and Order required the circuit court to apply the credit toward the monetary judgment against Musikantow in an amount equal to the proceeds of the sale of the property, unless Musikantow successfully argued the sale price did not accurately reflect fair value. Here, the proceeds were in the form of Horizon Bank's credit bid. The circuit court should have flatly rejected Musikantow's last hour[5] choice of law argument because the Stipulation and Order, executed in Wisconsin, nullified the guaranty's choice of law provision. The majority errs in concluding that the circuit court's decision to "decouple" the guaranty and foreclosure sale proceedings "was not an error of fact or law and thus its exercise of discretion was not erroneous." Majority op., ¶45.

¶83 By sanctioning the circuit court's actions, the majority overlooks the two false premises underlying the circuit court's decision: First, the circuit court inexplicably imported the governing law provision from the guaranty into the

---

[5] At no point, until the December 22nd confirmation of sale hearing, did any party dispute either the application of Wisconsin law or venue.

Stipulation and Order.[6] The circuit court failed to recognize that the terms and conditions of the guaranty no longer applied once the parties entered into the Stipulation and Order to resolve their dispute. Second, the federal court in which Horizon Bank filed the domestication action lacked any power whatsoever to determine fair value, and could only enforce the judgment against Musikantow.

¶84 As noted by the court of appeals, there was both a forum selection clause in the guaranty providing that litigation was to be venued in LaPorte County, Indiana, and a governing law provision providing that federal law or, unless preempted, Indiana law applied to the interpretation of the guaranty. Despite these provisions, Horizon Bank filed its complaint in Wisconsin and Musikantow raised no objection until after the Stipulation and Order was executed by the parties and entered by the court. Thus, the circuit court had jurisdiction over the entire proceeding by virtue of the parties stipulating to

---

[6] A governing law provision permits parties to "expressly agree that the law of a particular jurisdiction shall control their contractual relations." Bush v. Nat'l Sch. Studios, Inc., 139 Wis. 2d 635, 642, 407 N.W.2d 883 (1987); see also Choice-of-law clause, Black's Law Dictionary (10th ed. 2014) ("A contractual provision by which the parties designate the jurisdiction whose law will govern any disputes that may arise between the parties."). By contrast, a forum selection or choice of venue clause permits parties to choose the forum in which to litigate their claims. See Beilfuss v. Huffy Corp., 2004 WI App 118, ¶¶7-8, 274 Wis. 2d 500, 685 N.W.2d 373; see also Forum-selection clause, Black's Law Dictionary (10th ed. 2014) ("A contractual provision in which the parties establish the place (such as the country, state, or type of court) for specified litigation between them.").

settlement of the matter in Wisconsin Circuit Court. When the parties reached a stipulated settlement, there was no reason to interpret the guaranty any longer, so the choice of law provision became irrelevant. Unless Musikantow established that the Stipulation and Order was entered into under fraud, mistake, or oppression, he was not entitled to relief from it. See supra ¶21 (first citing Illinois Steel Co., 141 Wis. at 125; then citing Burmeister, 86 Wis. 2d at 664). The Stipulation and Order superseded the guaranty not only on the issues of choice of law and venue but in its entirety, and the Stipulation and Order constituted the parties' exclusive agreement on the terms governing application of any credit toward the monetary judgment against Musikantow.

¶85 As to the circuit court's second false premise, it failed to comprehend the purpose of the domestication action in the United States Court for the Middle District of Florida. That proceeding was commenced solely to enforce the judgment entered by the Wisconsin Circuit Court against Musikantow. The action was filed in Florida federal district court on the basis of diversity of citizenship. The Florida district court lacked jurisdiction to resolve the credit issue; its singular power in the domestication action was to make enforceable in Florida the monetary judgment entered in Wisconsin. See Trauger v. A.J. Spagnol Lumber Co., 442 So. 2d 182, 183 (Fla. 1983) ("An action to recover on a foreign judgment is completely independent from the original cause of action. It is the judgment from the other state which forms the basis for the cause of action, and the

15

validity of the claim on which the foreign judgment was entered is not open to inquiry.").[7]

¶86 These are basic principles of contract and civil procedure law. The circuit court's failure to recognize and apply them was clearly erroneous. It is unclear whether Musikantow's arguments on these matters arose from trial counsel's strategy or mistake. Regardless, his arguments inducing the circuit court to decline to determine Musikantow's credit cannot now give his client the opportunity to recontest fair value. Musikantow contends that denying him another chance to litigate the fair value of the property would offend procedural due process. However, procedural due process simply requires notice and an opportunity to be heard. Sweet v. Berge, 113 Wis. 2d 61, 64, 334 N.W.2d 559 (Ct. App. 1983) (citation omitted). Here, Musikantow had both.

¶87 Musikantow explicitly reserved rights to litigate fair value prior to confirmation of the sheriff's sale under Wis. Stat. § 846.165, per paragraph (f) of the Stipulation and Order. Paragraph 8 of the Stipulation and Order required the premises "to be sold at a fair and adequate price." In the Order Confirming Sheriff's Sale, the circuit court found "that the

---

[7] See also Stefan A. Riesenfeld, Creditors' Remedies and the Conflict of Laws——Part One: Individual Collection of Claims, 60 Colum. L. Rev. 659, 681 n.12 (1960) ("The term 'domesticated foreign judgment' is employed to designate out-of-state judgments that by some step short of an action on the foreign judgment resulting in a domestic judgment have become assimilated to domestic judgments for purposes of enforcement.").

16

amount bid by Horizon Bank, National Association for the purchase of the mortgaged premises represents the fair value of said premises." If Musikantow disagreed, he should have contested this before the circuit court instead of just talking about doing so. His failure to present testimony or any evidence on fair value in any respect constitutes a waiver of the rights he reserved under the Stipulation and Order. See Brunton v. Nuvell Credit Corp., 2010 WI 50, ¶35, 325 Wis. 2d 135, 785 N.W.2d 302 ("waiver is the intentional relinquishment or abandonment of a known right" (quoting State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612)). By declining to apply any credit to the monetary judgment against Musikantow based on Musikantow's argument that this determination needed to be made in federal court, the circuit court failed to correctly apply the law, the parties' agreement, and its own order.

¶88 Ignoring the fact that the Stipulation and Order resolved all of the parties' claims and defenses, the majority extends the circuit court's error by permitting the proceedings against the guarantor and mortgagor to be decoupled: "Further reflecting that fair value in the context of Wis. Stat. § 846.165 and the credit due on a guaranty are separate issues, the amount of a credit to be applied to a guaranty may be litigated in an action wholly apart from the fair value contemplated by §846.165." Majority op., ¶40. All of this is true, as a general proposition. In so holding in this case, however, the majority rewrites the terms of the Stipulation and

17

Order by excising the stipulated terms and conditions governing the calculation of the monetary judgment against Musikantow. The majority also misconstrues McFarland State Bank v. Sherry, 2012 WI App 4, 338 Wis. 2d 462, 809 N.W.2d 58, a case wholly consistent with the terms of the Stipulation and Order and also instructive on the issue of decoupling mortgage foreclosure and guaranty proceedings generally.

¶89 In McFarland, a bank successfully submitted a credit bid and acquired the mortgaged property at a sheriff's sale. Id., ¶1. A monetary judgment was entered against the guarantor for the remaining balance on the loan. Id. In the order confirming the sale, the circuit court found the property had a fair value of $147,000. Id., ¶5. The guarantor argued he was entitled to an offset against the monetary judgment in that amount. Id., ¶12. Among the bank's arguments, it cited Crown Life Ins. Co. v. LaBonte,[8] for the proposition that the fair value finding should not fix the amount of the offset; instead, "the circuit court could find a different value of the property, perhaps relying on additional evidence, for purposes of determining what [the guarantor's] offset should be." Id., ¶29. The court of appeals rejected this argument, instead requiring that the confirmed sale price be applied as the credit to the guarantor. Id., ¶31. It held that Crown Life did not "stand[] for the proposition" that a guarantor could be credited in an amount different from the fair value finding because "the trial

_____

[8] 111 Wis. 2d 26, 32, 330 N.W.2d 201 (1983).

court's use of that approach was not at issue before the supreme court." Id., ¶29-30. Moreover, the holding in Crown Life was inapplicable in McFarland because "the guarantor in Crown Life, unlike [the guarantor in McFarland], was not a party to the foreclosure proceedings." Id., ¶30. As a result, the guarantor in Crown Life, unlike the guarantor in McFarland——or Musikantow in this case——did not have the same opportunity to contest a fair value finding tied to the amount of the credit bid.

¶90 Under McFarland, where the guarantor is a party to the mortgage foreclosure proceedings, "it does not make sense" to "calculate[] a guarantor's liability based on a property value different than the price for which the property originally sold at a sheriff's sale." Id., ¶30. In this context, the fair value determination applies against both the guarantor and the mortgagor. No issues with due process arise because the guarantor is a party to the proceeding and can also litigate fair value alongside the mortgagor. While McFarland does not control the disposition of this case——the Stipulation and Order does——it is not a leap of logic to infer that parties negotiating settlement agreements under comparable facts rely on pertinent case law in crafting them. Here, the procedure for determining fair value tracks the rationale explained in McFarland for tying the sheriff's sale proceeds to the offset applied in the guarantor's favor——subject to the guarantor's ability to offer evidence supporting a different fair value before confirmation of the sale.

19

¶91 In distinguishing McFarland, the majority instead relies on Crown Life to support its conclusion that "the debt due under the mortgage and under the guaranty may properly follow separate tracks." Majority op., ¶42. However, as noted in McFarland, the guarantor in Crown Life——unlike the guarantor in McFarland——was not a party to the foreclosure proceedings. Unlike this case, in Crown Life there was no global settlement of the foreclosure action and the action on the guaranty, which proceeded independently and were resolved separately, the latter via a court trial. Accordingly, Crown Life lends support only to the conclusion that these two actions may proceed separately. But that unremarkable notion does not afford the circuit court the discretion to disregard the terms negotiated by the parties, set forth in a written stipulation and order, and entered by the court as a final judgment resolving all claims and defenses between the mortgagor, the bank, and the guarantor. Even the broad powers of a court acting in equity do not give a court such authority. A stipulation "is entitled to all the sanctity of any other [contract], and, when on the faith of it the parties have so acted in execution thereof that the status quo cannot be re-established as to one of them, it is only in a plain case of fraud, mistake, or oppression that the court should set it aside." Illinois Steel Co., 141 Wis. at 125. The majority nevertheless invokes a circuit court's equitable powers to set aside a stipulated settlement of equitable and contract claims, to ignore the Stipulation and Order's terms, and to decide the already-settled issues as the court wished rather

20

than as the parties agreed. Why would any similarly-situated parties ever settle such claims if the court may act on whim?[9]

¶92 By ignoring <u>McFarland</u> and casting aside the Stipulation and Order, the majority, under the guise of equity, jettisons fundamental rules governing the interpretation of stipulations and civil procedure that previously informed settlements of the sort reached by the parties in this case. <u>See</u> majority op., ¶44. This ruling is without precedent but now puts lenders, debtors and guarantors on notice that even a stipulated settlement, signed court order, and entered judgment will not bind a court to its terms but may be disregarded and rewritten by the circuit court.

   B. The Stipulation and Order is Not Ambiguous Regarding the
   Amount Musikantow Will Be Credited on the Monetary Judgment.

¶93 The majority's interpretation of the Stipulation and Order regarding the amount to be credited to Musikantow against the monetary judgment is incorrect. Paragraph 11 dictates how Musikantow is to be credited for the value from the sale of the premises acquired by Horizon Bank:

> The amount paid to [Horizon Bank] from the proceeds of
> said sale of the Premises, remaining after deduction
> by [Horizon Bank] of the amount of interest, fees,
> costs, expenses, disbursements and other charges paid

---

[9] The majority's disposition of this case impacts not only these parties but potentially all lenders and borrowers. As correctly noted by the amicus curiae, Wisconsin Bankers Association, the uncertainty generated by the majority's decision to disturb the reasonable expectation that the parties' contract would be enforced may increase the cost of lending, which basic economic principles suggest will be passed on to borrowers rather than borne by lenders.

21

or incurred by [Horizon Bank] not included in the monetary judgment against [Musikantow] (set forth below) shall be credited by [Horizon Bank] as payment on said monetary judgment.

The majority says this paragraph is ambiguous because it could reasonably be interpreted to mean the proceeds from the sale established the minimum amount of Musikantow's credit. Majority op., ¶¶48-51. I disagree.

¶94 When read in the context of the Stipulation and Order, there is no reasonable alternative reading of paragraph 11's language——"proceeds of said sale . . . shall be credited . . . as payment on said monetary judgment"——except that Musikantow receives the $2,250,000 credit on the monetary judgment. The majority does not offer any reasonable alternative, nor does it employ any discernable principles of contract interpretation. See majority op., ¶¶54-56. Rather, the majority simply regards this phrase as open-ended——"the floor"——thereby entitling Musikantow to a credit on the monetary judgment in some amount greater than the $2,250,000 credit bid by Horizon Bank. This conclusory assumption loses sight of the fact that paragraph 11 is part of a Stipulation and Order that resolves all claims and defenses between the parties. The Stipulation and Order directs a sheriff's sale of the premises for a "fair and adequate price" (paragraph 8); preserves Musikantow's rights to contest court confirmation of the sale (paragraph (f)); and mandates Musikantow be credited the amount paid to Horizon Bank from the proceeds of the sale as payment on the monetary judgment against him (paragraph 11). There is no provision whatsoever permitting the court to "leav[e] the

22

determination of the credit toward the guaranty for another day." Majority, ¶44.

¶95 The negative implication canon——expressio unius est exclusio alterius——is especially instructive here. "Under this principle, a specific mention in a contract of one or more matters is considered to exclude other matters of the same nature or class not expressly mentioned, even when all such matters would have been inferred had none been expressed." Goebel v. First Fed. Sav. & Loan Ass'n of Racine, 83 Wis. 2d 668, 673, 266 N.W.2d 352 (1978) (citations omitted). Essentially, the canon provides that the thing specified "can reasonably be thought to be an expression of all that shares in the grant or prohibition allowed." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012).

¶96 Here, paragraph 11 is the sole and specific mention in the Stipulation and Order of how much Musikantow will be credited on the monetary judgment. Paragraph 11 excludes alternative means by which Musikantow can be credited on the monetary judgment. It does not contain inclusive language (for example, "not limited to," "including," "such as," "at least," et cetera), an integrated list of items to be credited, or any language that would indicate Musikantow is entitled to be credited more than the "proceeds of said sale" of the mortgaged property.

¶97 The majority asserts that "[t]he stipulation prescribes what must be done, but it does not describe that the

23

amount is the totality of the credit." Majority op., ¶54. The negative implication canon rhetorically responds: "Does not the act of prescribing the mode, necessarily imply a prohibition to all other modes?" Scalia & Garner, supra ¶35, at 109-10 (quoting South Carolina ex rel M'Cready v. Hunt, 20 S.C.L. (2 Hill 1), 230 (S.C. Ct. App. 1834)). Here, solely prescribing the mode and extent of crediting Musikantow from the "proceeds of said sale" works to exclude all other modes and amounts of credit.

¶98 Regardless of the pervasive invocations of equity by the majority, the Stipulation and Order governs all issues presented. Enforcing this agreement is entirely dispositive of Musikantow's appeal. The Stipulation and Order is unambiguous and its terms provide the singular means by which Musikantow will be credited for "payment on said monetary judgment": the "proceeds of said sale," specifically $2,250,000.

IV

¶99 The majority incorrectly invokes equity to trump the terms and conditions of a valid and enforceable Stipulation and Order. The majority unwinds the Stipulation and Order, and "decouples" the contract claim against Musikantow from the foreclosure claim against Marshalls Point. The Stipulation and Order mandates that Musikantow receive no more credit than the "proceeds of said sale," which was the amount of the $2,250,000 credit bid, yet the majority allows Musikantow to return to the circuit court to relitigate an issue he waived by declining to exercise the rights he reserved under the Stipulation and Order.

24

The court of appeals decision was correct and I would affirm. Because equity may not override the terms of a stipulation and order for judgment, I respectfully dissent.